PEOPLE v LESTER

Docket No. 199269. Submitted May 13, 1998, at Grand Rapids. Decided
     October 23, 1998, at 9:00 A.M.

   David J. Lester was convicted by a jury in the Kalamazoo Circuit
   Court, John F. Foley, J., of delivery of over 650 grams of cocaine
   and of conspiracy to deliver between 225 grams and 650 grams of
   cocaine. The Court of Appeals, MURPHY, P.J., and HOLBROOK, JR., and
   MAHER, JJ., affirmed in an unpublished opinion per curiam, issued
   October 5, 1990 (Docket No. 112954). The Supreme Court denied
   the defendant's application for leave to appeal. 440 Mich 910
   (1992). The defendant filed a motion in the trial court for relief
   from judgment, arguing in part that newly discovered evidence
   indicated that the prosecution withheld evidence from the defend-
   ant and allowed a prosecution witness to perjure herself when the
   witness was cross-examined about the scope of the plea bargain
   under which she testified, her involvement in insurance fraud, her
   use of marijuana, and her involvement in other misconduct. The
   court denied the motion. The defendant filed a delayed application
   for leave to appeal in the Court of Appeals, and leave to appeal was
   granted.

   The Court of Appeals *held*:

   1. The trial court did not clearly err in finding that the prosecu-
   tion witness had not testified falsely when she stated that her plea
   bargain only called for the prosecution to charge her with delivery
   of between 225 grams and 650 grams of cocaine instead of delivery
   of over 650 grams of cocaine. The record does not support the
   defendant's claim that the prosecution additionally agreed not to
   charge the defendant with multiple counts of insurance fraud.

   2. The trial court did not err in ruling that the claimed newly dis-
   covered evidence was inadmissible under MRE 608(b). This rule
   provides that specific instances of the conduct of a witness, for the
   purpose of attacking or supporting the witness' credibility, other
   than conviction of crime as provided in MRE 609, may not be
   proved by extrinsic evidence.

   3. A prosecutor is obligated by the Due Process Clause of the
   Fourteenth Amendment to correct perjured testimony relating to a

witness' credibility. In this case, the record does not support the defendant's claim that the prosecution witness at issue committed perjury when she testified about marijuana use. The matter must be remanded for a determination whether the prosecution knew or can be deemed to have known that the witness lied when she denied involvement in insurance fraud. If the trial court on remand finds that the prosecution was aware that the witness lied when she denied participation in insurance fraud, a new trial will be required only if such false testimony could in any reasonable likelihood have affected the judgment of the jury.

4. A criminal defendant has a due process right of access to evidence in the possession of the prosecution that might lead the jury to entertain a reasonable doubt about the defendant's guilt. This right of access extends to evidence that would materially affect the credibility of a prosecution witness. The prosecution's failure to provide a defendant with access to evidence impeaching a prosecution witness will require a new trial if the undisclosed evidence is material. Undisclosed evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. In this case, the matter must be remanded for a determination whether the prosecution withheld from the defendant evidence regarding the credibility of prosecution witnesses and, if so, whether the evidence was material.

Affirmed in part and remanded.

1. CRIMINAL LAW — NEW TRIAL — NEWLY DISCOVERED EVIDENCE — APPEAL.

The Court of Appeals reviews for abuse of discretion a trial court's grant or denial of a defendant's motion for a new trial based on newly discovered evidence.

2. CRIMINAL LAW — NEW TRIAL — NEWLY DISCOVERED EVIDENCE.

A motion for a new trial based on newly discovered evidence may be granted upon a showing that the evidence itself, not merely its materiality, is newly discovered, that the evidence is not merely cumulative, that the evidence is such as to render a different result probable on retrial, and that the defendant could not with reasonable diligence have produced it at trial.

3. CONSTITUTIONAL LAW — DUE PROCESS - CRIMINAL PROSECUTIONS — FALSE TESTIMONY BY PROSECUTION WITNESSES — NEW TRIAL.

A prosecutor has an obligation under the Due Process Clause of the Fourteenth Amendment to report to a defendant and to a trial court perjury by a prosecution witness in proceedings against the

defendant, including perjured testimony relating to the witness' credibility; a prosecutor's failure to correct perjured testimony by a prosecution witness at a jury trial will require a new trial if the false testimony could in any reasonable likelihood have affected the judgment of the jury (US Const, Am XIV).

4. CONSTITUTIONAL LAW — DUE PROCESS — CRIMINAL PROSECUTIONS — DISCOVERY BY DEFENDANTS.

A criminal defendant has a due process right of access to evidence in the possession of the prosecution that might lead a jury to entertain a reasonable doubt about the defendant's guilt; this right of access extends to evidence that would materially affect the credibility of a prosecution witness.

5. CONSTITUTIONAL LAW — DUE PROCESS — CRIMINAL PROSECUTIONS — DISCOVERY BY DEFENDANTS.

A criminal defendant who claims a due process right of access to evidence in the possession of the prosecution must prove that the state possessed evidence favorable to the defendant, that the defendant did not possess the evidence and could not have obtained it with any reasonable diligence, that the prosecution suppressed the favorable evidence, and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

6. CONSTITUTIONAL LAW — DUE PROCESS — CRIMINAL PROSECUTIONS — DISCOVERY BY DEFENDANTS — IMPEACHMENT EVIDENCE — NEW TRIAL.

The failure of a prosecutor to provide a defendant with access to evidence that would impeach a prosecution witness, which access is required under the constitutional guarantee of due process, will warrant a new trial if the undisclosed evidence is material; such undisclosed evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Frank J. Machnik*, Assistant Prosecuting Attorney, for the plaintiff.

*Carla J. Johnson*, for the defendant.

Before: FITZGERALD, P.J., and HOLBROOK, JR., and CAVANAGH, JJ.

CAVANAGH, J. Defendant appeals by leave granted his jury trial convictions of one count of delivery of over 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i), and one count of conspiracy to deliver between 225 grams and 650 grams of cocaine, MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). The trial court imposed the mandatory life sentence for the delivery conviction[1] and twenty to thirty years' imprisonment for the conspiracy conviction. We affirm in part and remand for further proceedings.

Defendant's convictions arose out of the sale of approximately 666 grams of cocaine by Brenda Houston to undercover police officer Patrick Codere of the Southwest Enforcement Team on April 30, 1987. At defendant's trial, Houston testified as part of a plea agreement under which she would avoid the mandatory life sentence for delivery of the cocaine. Houston testified that defendant had supplied her with the drugs and that she had "a business relationship" with defendant whereby any profits made were to be split equally between them. Another witness, Credell Carpenter, also testifying with the benefit of a plea agreement, stated that he saw defendant the day before the delivery with a large quantity of cocaine. After Houston's arrest, defendant told Carpenter that he had given her a large amount of cocaine to sell.

---

[1] The Legislature has recently enacted 1998 PA 314, which provides that a prisoner sentenced for a violation of MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) before October 1, 1992, who has served twenty years of his sentence, may be released on parole by the Parole Board.

A jury convicted defendant of one count of delivery of over 650 grams of cocaine and one count of conspiracy to deliver between 225 grams and 650 grams of cocaine on December 18, 1987. This Court affirmed defendant's convictions and sentences,[2] and defendant's application for leave to appeal in the Supreme Court was denied.[3]

In his first postappeal motion for relief from judgment under subchapter 6.500 of the Michigan Court Rules, defendant alleged misconduct by the police and the prosecutor in using or failing to correct false testimony by Houston regarding the consideration she received in exchange for her testimony against defendant and other matters affecting her credibility as a witness. Specifically, defendant challenged Houston's testimony that she had no sentence agreement with the prosecution other than a reduction of the delivery charges against her from delivery of over 650 grams to delivery of between 225 and 650 grams. Defendant presented evidence that the final agreement for Houston's guilty plea, tendered several weeks after defendant's trial, also provided her with immunity from prosecution for various acts of insurance fraud. Defendant also challenged the failure of the prosecuting attorney or police officials to correct Houston's denial, on cross-examination, of any participation in staging a false burglary at her home for which she received insurance money. Previously, Houston had admitted to Detective Donald Smith of the Kalamazoo Police Department that she and her

---

[2] *People v Lester*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 1990 (Docket No. 112954).

[3] 440 Mich 910 (1992).

then-boyfriend, Gary Roberts, had been involved in the phony burglary.[4] Her admissions were set forth in a police report that had been available to the prosecutor, but had not been provided to defense counsel, although defense counsel had received a tape recording of most of Houston's inculpatory statements to the police. Defendant also argued that the jury's verdicts on the two counts were inconsistent, given the different amounts of cocaine involved.

The trial court ordered an evidentiary hearing regarding defendant's motion, and the hearing took place on June 8, 1993. Testimony was received from the prosecuting attorney who tried defendant's case, Mark Courtade, and Houston's attorney, Earl Dalzell. Courtade testified that the only agreement his office had with Houston at the time of the trial was that she would be charged with the lesser offense of possession with intent to deliver over 225 but less than 650 grams of cocaine, MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii), rather than delivery of over 650 grams of cocaine, which carries a mandatory life sentence. Furthermore, Courtade stated that he had no knowledge of Houston's involvement with any insur-

---

[4] At defendant's trial, Houston testified that she had collected insurance money after the burglary occurred at her house, then found out months later that Roberts had faked the burglary. Houston further testified that, two years before trial, Carpenter had secreted her luggage away upon her return from a trip to New York and induced her to report it as stolen, resulting in her receiving a $600 or $700 insurance settlement. Houston explained that she had not initially known that Carpenter had taken the luggage. In addition, defense counsel elicited from Houston that she had collected an insurance settlement after she had reported being raped in a motel. From the insurance proceeds, Houston paid Carpenter approximately $19,000. Houston stated that the rape really happened and implied that she paid Carpenter so that he could achieve some kind of extralegal remedy for her.

ance frauds until she was cross-examined at trial, and immunity from prosecution for her involvement with such frauds was not offered as part of her plea agreement until after defendant's trial.[5] Dalzell's testimony essentially corroborated Courtade's testimony in this regard.[6] Defendant also submitted excerpts from the transcript of the trial of Thaddeus Earl Dunning, which occurred shortly before defendant's own trial, in which the prosecution elicited testimony from Carpenter regarding Houston's involvement in a number of insurance frauds.

In an opinion and order entered December 22, 1993, the trial court rejected on the merits defendant's various arguments that he was entitled to relief. Defendant then sought leave to appeal the trial court's decision in this Court. However, before the matter was submitted to a panel of this Court for decision, defendant retained his present appellate

---

[5] Courtade testified that when, after defendant's trial, Dalzell was attempting to obtain a plea agreement for Houston,

> I told him I was not going to negotiate. She had to plead guilty to the charge that we brought. She had to go to prison for twenty years and, at that point, he said well, how about throwing in the misdemeanors. I said fine.
>
> In fact, at that time, I wasn't even thinking that there was [sic] any misdemeanors, because we had no jurisdiction over the allegations of theft of luggage in Chicago; we had no jurisdiction over the allegations of fake rapes in Kent County.
>
> The only thing we had was potentially the Roberts breaking and entering, false police report, which he had apparently been charged with. So when you have a 90-day concurrent misdemeanor, my thoughts were why fight it; she's going for twenty years.

[6] Dalzell testified that he had not known of any possible fraud charges against Houston until after she testified at defendant's trial. When Houston subsequently reached a plea agreement with the prosecutor's office, Dalzell made sure that the agreement included immunity from prosecution for any frauds that had occurred in Kalamazoo County.

counsel, who subsequently filed a motion to strike the application for leave to appeal. This Court granted defendant's motion on June 16, 1994.

In February 1995, defendant filed a second motion for relief from judgment pursuant to MCR 6.500 in the trial court. Defendant cited various items of alleged "newly discovered evidence" in support of his perjured-testimony claims, as well as new grounds for relief based on the racial composition of the jury pool. Defendant offered new deposition testimony from Detective Smith and Officer Codere that he contended was relevant to the deal given to Houston in exchange for her testimony. Essentially, these witnesses testified that when Houston was arrested on drug charges, they had information that she was involved in insurance fraud, but the police officer in charge of the case, Lieutenant Charlie McCord, advised them that Houston was not to be charged in connection with her alleged frauds. Defendant also again cited the testimony from the Dunnings trial regarding Houston's involvement in fraudulent activities as "new evidence" that Houston gave false testimony at defendant's trial regarding her involvement in insurance frauds. Defendant further argued that Houston had committed perjury when she testified that she had not used marijuana during the previous year in light of the fact that marijuana was discovered when a search warrant was executed at her home in conjunction with her arrest.

In its November 17, 1995, opinion and order, the trial court denied defendant's second motion for relief from judgment. With regard to defendant's challenge to Houston's trial testimony regarding the considera-

tion she received in exchange for her testimony against defendant, the trial court again found that Houston's testimony was truthful in this regard, essentially finding the new testimony from Detective Smith and Officer Codere insufficient to rebut the testimony of prosecuting attorney Courtade at the June 8, 1993, evidentiary hearing and other evidence corroborating Houston's trial testimony. As for defendant's claims that Houston had falsely testified regarding her involvement in insurance frauds, marijuana use, and other misconduct, the trial court apparently reasoned that defendant was not prejudiced in this regard because any extrinsic evidence of Houston's involvement in such acts of misconduct would be inadmissible under MRE 608(b). Finally, the trial court rejected defendant's challenges to the racial composition of his jury pool and the effectiveness of trial counsel and his previous appellate counsel.

Defendant filed a delayed application for leave to appeal the trial court's decision. On June 12, 1997, this Court granted leave to appeal limited to the second issue raised in the application. That issue was stated by defendant as follows: "Did the court err when it held that since evidence of prior bad acts would not be admissible under MRE 608(b), the prosecutor could withhold evidence and allow their [sic] star witness to commit perjury on the stand?"

As an initial matter, we note that, in his phrasing of the issue, defendant misrepresents the trial court's holding. The trial court did *not* hold that the prosecutor could allow Houston to commit perjury on the stand or that the prosecutor could withhold evidence. Rather, the trial court found that Houston testified

truthfully about the scope of her agreement with the prosecutor at the time of defendant's trial. With regard to defendant's other allegations, the trial court did not make a specific finding regarding whether the prosecutor improperly allowed Houston to commit perjury or withheld evidence. The trial court simply concluded that any error was harmless because defendant's new evidence was related to collateral matters and, pursuant to MRE 608(b),   defendant would not have been able to impeach Houston with extrinsic evidence. Therefore, keeping in mind the actual scope of the trial court's ruling, we now address defendant's allegations of error.

This Court reviews a trial court's postconviction ruling granting or denying a new trial based on newly discovered evidence for an abuse of discretion. *People v Bradshaw*, 165 Mich App 562, 566-567; 419 NW2d 33 (1988).  A motion for a new trial based on newly discovered evidence may be granted upon a showing that (1) the evidence itself, not merely its materiality, is newly discovered, (2) the evidence is not merely cumulative, (3) the evidence is such as to render a different result probable on retrial, and (4) the defendant could not with reasonable diligence have produced it at trial. *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992).  We review the trial court's findings of fact for clear error. *People v Williams*, 228 Mich App 546, 557; 580 NW2d 438 (1998).  Whether a prosecutor may allow a witness to commit perjury or withhold evidence that would tend to contravene its witness, where such evidence would be inadmissible under MRE 608(b),  is a question of law. This Court reviews questions of law de novo.

*People v Tracey*, 221 Mich App 321, 323-324; 561 NW2d .133 (1997).

I

We first address defendant's claim that newly discovered evidence establishes that Houston testified falsely regarding her agreement with the prosecutor. After reviewing the record, we conclude that the trial court did not clearly err in finding that relief from fraud charges was not part of Houston's agreement with the prosecutor at the time of defendant's trial.

Contrary to defendant's argument, the trial court did not "ignore" the new testimony from Detective Smith and Officer Codere regarding their understanding that the prosecution had already decided not to charge Houston in connection with the insurance frauds investigated before defendant's trial. Rather, the trial court essentially found that this testimony was insufficient to rebut the previous testimony from Houston's attorney and prosecuting attorney Courtade himself at the June 8, 1993, evidentiary hearing. The trial court's conclusion is not clearly erroneous; the new testimony from Detective Smith and Officer Codere is largely based upon assumption, conjecture, and second-hand information, whereas the contrary evidence cited by the trial court involved first-hand knowledge.[7]

---

[7] Smith's deposition contains the following passage:

*Q.* Okay. Now, do you know—when Lieutenant McCord said he contacted somebody in the prosecutor's office, do you know who he contacted?

*A.* No, I don't.

*Q.* And you say he had been authorized to give her [Houston] a deal. Did that mean he had been authorized to drop these charges

II

Defendant also asserts that the trial court erred in finding that his newly discovered evidence was inadmissible under MRE 608(b). We disagree. MRE 608(b) states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Defendant argues that the question of a witness' bias is never a collateral matter, and accordingly, evidence of bias cannot be excluded under MRE 608(b). As defendant notes, evidence of a witness' bias or interest in a case is highly relevant to her credibility. See *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995). However, defendant fails to explain how the evidence allegedly withheld from him demonstrates bias on the part of Houston and Carpenter.

---

or not press these charges, as far as the fraud stuff, as long as she cooperated on the drug stuff?

*A.* Right. I'm sure that that would have to be part of it, because at this time point in time [sic], she's involved in a light [sic—life] felony. So to say, Well, we're going to throw the light [sic—life] felony out but charge you with a nickel and dime larceny wouldn't make a whole lot of sense.

Codere testified that he was aware of allegations of fraud against Houston, but he was not present at any of the plea negotiations in her case.

Defendant claims bias from Houston's and Carpenter's participation in frauds that they did not admit when testifying against defendant, but, other than the failed argument that Houston testified in part to avoid fraud charges, defendant does not explain why the witnesses' participation in various frauds should cause them to be biased against him. Defendant does not assert that Carpenter understated the extent of his agreement with the prosecution. Defendant also alludes to Houston's alleged drug consumption, but he makes no effort to illustrate how evidence that Houston may have used drugs establishes that she was biased against him. Accordingly, we reject defendant's contention that the evidence was admissible to show bias on the part of the witnesses.

Defendant also argues that the trial court erred because the new evidence is relevant not to character evidence that would be inadmissible under MRE 608(b), but rather to direct contradiction of prosecution witnesses' statements. In support of this argument, defendant relies on *People v Vasher*, 449 Mich 494; 537 NW2d 168 (1995), and *Wischmeyer v Schanz*, 449 Mich 469; 536 NW2d 760 (1995). We conclude, however, that neither case supports defendant's claim.

In *Vasher*, the Supreme Court held that, under MRE 404(a)(1), the prosecution may introduce evidence to rebut a defendant's specific statement regarding a matter germane to the question of guilt or innocence. *Vasher, supra* at 504. Thus, *Vasher* addresses MRE 404(a)(1), which concerns evidence to rebut a defendant's assertion of good character, not MRE 608(b), which concerns evidence of specific conduct for pur-

poses of attacking a witness' general credibility. The Court reiterated in *Vasher* that a party may introduce extrinsic evidence to contradict an adversary's answers on cross-examination regarding matters germane to the trial, but generally a party may not introduce extrinsic evidence to contradict a witness regarding collateral, irrelevant, or immaterial matters. See *id.* Furthermore, *Vasher* concerned the rebuttal of the defendant's testimony on a point closely tied in with the question of guilt or innocence,[8] whereas in the instant case the controversy concerns prosecution witnesses' conduct that is unrelated to defendant and the crimes with which he was charged.

*Wischmeyer*, a medical malpractice action, likewise does not support defendant's contention that evidence regarding Houston's prior acts was admissible to impeach her testimony. In *Wischmeyer*, the trial court allowed the defendant to cross-examine the plaintiff's expert regarding unsuccessful surgeries that he had performed. The Supreme Court held that the

---

[8] In *Vasher*, the defendant was charged with three counts of first-degree criminal sexual conduct, where the three victims were four years old or younger. The defendant introduced evidence that he had a loving, grandfatherly relationship with the victims and therefore would never harm them. The defendant denied that he had said that young girls should be initiated into sex by their own family members. On rebuttal, the prosecutor called a witness who testified that the defendant had told her that it used to be common for family members to introduce young girls to sexual intercourse. The Supreme Court noted that, as a general rule, a witness may not be contradicted regarding collateral, irrelevant, or immaterial matters. However, the Court held that the rebuttal testimony was proper because it was narrowly focused on refuting the defendant's denial that he had said that he believed that it was acceptable for family members to initiate young girls into sexual activity. The Court explained, "Because this was a matter so closely bearing on defendant's guilt or innocence, it was not error for the prosecutor to have impeached defendant." *Vasher, supra* at 504.

cross-examination was permissible because the surgeries were relevant to the expert's competency. Moreover, the defendant was required to settle for whatever answer the expert gave because the trial court had not allowed the expert to be impeached on any extrinsic matters. See *Wischmeyer, supra* at 477-478.

Applying *Wischmeyer* to the instant case, we conclude that MRE 608(b) barred the admission of the new evidence advanced by defendant. On cross-examination of Houston, defense counsel inquired into specific instances of prior bad acts, which Houston denied. Pursuant to MRE 608(b), defendant was required to accept Houston's responses without recourse to extrinsic impeachment evidence. In other words, as the trial court in *Wischmeyer* put it, defendant was "stuck with" Houston's answers. See *Wischmeyer, supra* at 478.

III

Defendant asserts that he is entitled to a new trial because the prosecutor allowed Houston to perjure herself. Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. *California v Trombetta*, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984). Prosecutors therefore have a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath. *Id.*; *Napue v Illinois*, 360 US 264, 269-272; 79 S Ct 1173; 3 L Ed 2d 1217 (1959); see also *Mooney v Holohan*, 294 US 103, 112; 55 S Ct 340; 79 L Ed 791 (1935).

Michigan courts have also recognized that the prosecutor may not knowingly use false testimony to obtain a conviction, *People v Wiese*, 425 Mich 448, 455; 389 NW2d 866 (1986), and that a prosecutor has a duty to correct false evidence, *People v Woods*, 416 Mich 581, 601; 331 NW2d 707 (1982), cert den sub nom *Michigan v Alexander*, 462 US 1134; 103 S Ct 3116; 77 L Ed 2d 1370 (1983); *People v Thomas*, 49 Mich App 682, 693; 212 NW2d 728 (1973). As this Court has explained,

> [t]he prosecutor's duty to prevent lies from entering the evidence in the guise of truth stems not from any particular role in the adversary process; rather, it is derived from the prosecution's duty to represent the public interest, and to place the pursuit of truth and justice above the pursuit of conviction. [*People v Cassell*, 63 Mich App 226, 229; 234 NW2d 460 (1975).]

In *Napue, supra*, the United States Supreme Court expanded the prosecutorial duty to correct perjured testimony to include perjured testimony that related to the witness' credibility and not just the facts of the case. *Napue, supra* at 269. The Court explained, "The jury's estimation of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence . . . ." *Id.*

The trial court determined that defendant was not prejudiced by the alleged false testimony because, pursuant to MRE 608(b), defendant could not have contradicted the testimony with extrinsic evidence. We conclude that the trial court erred. A prosecutor has a duty to correct his witness' false testimony, without regard to whether evidence to rebut the witness would be admissible for impeachment under

MRE 608(b).   See *Trombetta, supra*; *Woods, supra*; *Thomas, supra*. We therefore consider each of defendant's allegations that the prosecutor allowed false testimony to pass uncorrected.

Defendant first claims that the prosecutor permitted Houston to perjure herself by testifying that she had not smoked marijuana for more than a year. In support of this assertion, defendant points to the fact that the police found marijuana when they executed a search warrant at her house. However, the mere presence of marijuana in Houston's residence, which she shared with her boyfriend, does not conclusively establish that Houston lied when she testified that she had abstained from marijuana for over a year. Assuming that the prosecution knew when Houston testified that marijuana had been found at her residence, that knowledge did not sufficiently establish that Houston was lying so as to trigger the prosecution's duty to correct Houston's statement.

Defendant next asserts that the prosecution allowed Houston to testify falsely about her participation in various insurance frauds.[9] Defendant relies in part on Carpenter's testimony in the Dunning case, in which Carpenter stated that he had participated in traveler's check frauds with Houston on several occasions, and he knew that she had been involved in other frauds. However, assuming that the prosecutor was or should have been aware of the discrepancy,[10]

---

[9] See note 4.

[10] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), does not require prosecutors to search their unrelated files to exclude the possibility, however remote, that they contain exculpatory information. *United States v Joseph*, 996 F2d 36, 41 (CA 3, 1993), cert den 510 US 937;

defendant cites no authority for the proposition that the prosecution must disbelieve its own witness when testimony from another witness contradicts her. Cf. *United States v Lopez*, 985 F2d 520, 524 (CA 11, 1993) (stating that knowledge of the falsity of testimony is not imputed to the prosecutor when a key government witness' testimony is in conflict with another's statement).

Defendant also cites the fact that Detective Smith testified at a posttrial deposition in an unrelated case that Houston had admitted to him that she took part in an insurance fraud involving a faked breaking and entering. In its decision of December 22, 1993, the trial court appears to have concluded that defendant was not prejudiced by Houston's false testimony because defendant already had possession of a tape recording of Houston's admission of involvement in the staged burglary. However, the prosecutor's constitutional duty to report to the court whenever government witnesses lie under oath is not vitiated when defense counsel is or should be aware that the testimony is false and does nothing. The prosecutor has a duty to correct the false testimony of a state witness, which arises when the false testimony appears. *Wiese*, *supra* at 455.

In the present case, the prosecutor testified that he was unaware of Houston's participation in any insurance frauds until she was cross-examined at trial. However, Codere and McCord were apparently aware of Houston's involvement in at least one insurance fraud, and knowledge of facts that are known to the

114 S Ct 357; 126 L Ed 2d 321 (1993); *United States v Brooks*, 296 US App DC 219, 223; 966 F2d 1500 (1992).

prosecutor's chief investigative officer must be imputed to the prosecutor. *Cassell, supra* at 228-229; see *Kyles v Whitley,* 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). Accordingly, we remand this case to the trial court for a determination whether the prosecutor knew, or can be deemed to have known, that Houston committed perjury when she testified that she had not taken part in various insurance frauds. If, on remand, the trial court finds that the prosecutor was aware that Houston lied when she denied participation in insurance frauds, the prosecutor's failure to correct false testimony does not automatically require reversal.[11] A new trial is required only if the false testimony could in any reasonable likelihood have affected the judgment of the jury. *Wiese, supra* at 454.

IV

Defendant also contends that, despite his request for discovery, the prosecutor withheld the following information: (1) the police found marijuana in Houston's house when they executed a search warrant; (2) Houston had participated in a number of insurance frauds; (3) Houston stole drugs from the hospital where she worked; (4) Houston was to receive immu-

---

[11] In the absence of the prosecutor's knowing use of perjury, a new trial is warranted only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States v Endicott,* 869 F2d 452, 455 (CA 9, 1989).

nity from fraud charges, and (5) Carpenter had been involved in many insurance frauds, some with Houston. Defendant asserts that the prosecutor's failure to disclose this information constitutes error requiring reversal.

A criminal defendant has a due process right of access to certain information possessed by the prosecution. *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). This due process requirement of disclosure applies to evidence that might lead a jury to entertain a reasonable doubt about a defendant's guilt. *Giglio v United States,* 405 US 150, 154; 92 S Ct 763; 31 L Ed 2d 104 (1972). Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule because, if disclosed and used effectively, such evidence "may make the difference between conviction and acquittal." *United States v Bagley,* 473 US 667, 676; 105 S Ct 3375; 87 L Ed 2d 481 (1985).

Due process does not require the prosecutor to allow complete discovery of his files as a matter of practice. *United States v Agurs,* 427 US 97, 109; 96 S Ct 2392; 49 L Ed 2d 342 (1976). However, the prosecutor is under a duty to disclose any information that would materially affect the credibility of his witnesses. *United States v Smith,* 316 US App DC 199, 202; 77 F3d 511 (1996); *People v Murray,* 54 Mich App 723; 221 NW2d 468 (1974).

In order to establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4)

that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *United States v Meros*, 866 F2d 1304, 1308 (CA 11, 1989), cert den 493 US 932; 110 S Ct 322; 107 L Ed 2d 312 (1989).

The failure to disclose impeachment evidence does not require automatic reversal, even where, as in the present situation, the prosecution's case depends largely on the credibility of a particular witness. *Bagley, supra* at 676-677; *Giglio, supra* at 154. The court still must find the evidence material. *Id.*; *United States v Trujillo*, 136 F3d 1388, 1393 (CA 10, 1998), cert den ___ US ___; 119 S Ct 87; 142 L Ed 2d 69 (1998). Undisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley, supra* at 682; *People v Fink*, 456 Mich 449, 454; 574 NW2d 28 (1998). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Bagley, supra.* Accordingly, undisclosed evidence will be deemed material only if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles, supra* at 435. In determining the materiality of undisclosed information, a reviewing court may consider any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. *Bagley, supra* at 683.

In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant to the crime or where the likely effect on the witness' credibility

would have undermined a critical element of the prosecutor's case. In contrast, a new trial is generally not required where the testimony of the witness is corroborated by other testimony or where the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable. *United States v Payne*, 63 F3d 1200, 1210 (CA 2, 1995), cert den 516 US 1165; 116 S Ct 1056; 134 L Ed 2d 201 (1996).

In the present case, the prosecutor denies that any evidence was withheld from defendant. Because the trial court concluded that any error was harmless because the evidence was related to collateral matters, it did not address whether the prosecutor improperly withheld evidence. We therefore remand for a determination whether the prosecutor withheld from defendant evidence regarding the credibility of his witnesses and, if so, whether that evidence was material.

Affirmed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.