# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

ADRIAN MAHDEE AKRAM,

   Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No.  315402
Wayne Circuit Court
LC No.  07-012443-FC

Before:  MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

At defendant's third trial, a jury convicted him of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b.[1]  The trial court sentenced defendant as an habitual offender, third offense, MCL 769.11, to concurrent terms of life imprisonment for the murder conviction, and 38 months to 10 years' imprisonment for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction.  Defendant appeals as of right.  For the reasons set forth in this opinion, we affirm.

## A.  FACTS

Defendant was convicted of fatally shooting 23-year-old Orlando Miller at approximately 5:30 p.m. on May 6, 2007, in Detroit.  The prosecution presented two eyewitnesses who identified defendant as the shooter.  Damia Johnson testified that she and Miller were walking down the street when defendant, armed with a gun, approached them.  According to Johnson, Miller asked defendant, "What's up, what are you looking at?"  Defendant then responded, "You know what's up" and proceeded to shoot Miller several times.  Lawrence Archer, who was in the area looking for homes, testified that he observed defendant emerge from an alley, go up to

---

[1] Defendant was originally convicted of these same offenses in 2007.  In a prior appeal, this Court reversed defendant's convictions on the basis of ineffective assistance of counsel and remanded for a new trial.  *People v Akram,* unpublished opinion per curiam of the Court of Appeals, issued August 31, 2010 (Docket No. 283161).  Defendant's second trial in August 2011 ended in a mistrial after the jury could not reach a verdict.

Miller, say something to Miller, and then shoot him. Archer identified defendant in a photographic array and was 100-percent certain of his identification. Johnson failed to identify defendant in a photographic lineup days after the shooting and first identified defendant in court during defendant's first trial in November 2007. Johnson testified that she was certain of her identification. She explained that she recognized defendant in the earlier photographic lineup, but fear stopped her from selecting defendant's photo. The defense theory at trial was that defendant was misidentified as the shooter and that the eyewitnesses were unreliable. Defendant presented three witnesses to support his alibi defense that at the time of the shooting he was at a funeral home attending his younger brother's viewing, which lasted from 3:00 to 7:00 p.m. on May 6, 2007.

## B. ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to call additional alibi witnesses at trial.

Because defendant failed to move for a new trial or request a *Ginther*[2] hearing in the trial court, our review is limited to mistakes apparent on the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). A claim of ineffective assistance of counsel involves issues of law and fact. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id.*

To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. *Id*. at 387-388. In doing so, defendant must overcome the strong presumption that counsel's assistance was sound trial strategy. *Id*. at 388. Second, defendant must show that but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23.

Defendant contends that defense counsel was ineffective for failing to investigate and present alibi witnesses "for the exact time of the murder."

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

After defendant's first trial, the trial court held a *Ginther* hearing in February 2009, during which defendant presented five alibi witnesses to show that at the time of the shooting he was attending a viewing for his brother, Avery, from 3:00 to 7:00 p.m. at the Swanson Funeral Home. Defendant presented: (1) his brother, Andre; (2) his sister-in-law, Raquel; (3) Avery's friend, Antone Webb; (4) Avery's friend, James Hunter; and (5) Avery's fiancée, Kamilah Helton. All five witnesses testified that they saw defendant at the viewing at the time of the shooting. After the *Ginther* hearing, this Court ordered a new trial based on former defense counsel's failure to present an alibi defense. Defense counsel was not involved in the *Ginther* hearing. Defense counsel represented defendant at his second jury trial in August 2011. On June 27, 2011, defense counsel filed a notice of alibi, indicating that defendant was at the funeral home at the time of the shooting. The notice listed 12 witnesses, including the five who testified at the *Ginther* hearing. Ultimately, defense counsel called Andre and Raquel Akram at the second trial. The second trial ended in a mistrial, and a third trial was scheduled.

Before defendant's third trial, defense counsel filed a notice of alibi and a witness list, both of which included the same witnesses listed in the previously filed notice of alibi, with the exception of Hunter (who had testified at the *Ginther* hearing and did not testify at defendant's second trial). During the third trial, defense counsel again called Andre and Raquel to testify in support of the alibi defense, as well as Gross-Caldwell—a college friend of André's and Raquel's. All three witnesses testified that they observed defendant at the funeral home, but no witness testified to observing defendant at the exact time of the shooting, i.e., between 5:30 and 5:40 p.m.

Defendant now argues that defense counsel should have called additional alibi witnesses, who could have placed him at the funeral home at exactly 5:30 p.m. In his appellate brief, defendant does not provide the names of the additional witnesses he believes defense counsel should have called. In his related motion to remand, defendant named the three other witnesses who previously testified at the *Ginther* hearing, Helton, Hunter, and Webb. Defendant attached to his motion to remand affidavits of two of those three witnesses, Helton and Hunter, as well as his own affidavit and the affidavit of his nephew, Adonis Akram. In her affidavit, Helton averred that she was at the funeral home on May 6 and observed defendant at 5:30 p.m., which was the exact time of the shooting, she was able and willing to testify but was not contacted by defense counsel. Adonis averred in his affidavit that he observed defendant, his uncle, at the funeral home between 5:30 and 5:40 p.m. and was willing to testify that his uncle did not commit the murder. Hunter also averred that he observed defendant at the funeral home specifically from 5:30 to 5:40 p.m. and that he wanted to testify at defendant's trial, but was not interviewed by defense counsel. Finally, defendant submitted his own affidavit, averring that when he asked defense counsel "to call more witnesses" "to testify to the time of the incident," defense counsel responded, "Why, you already won."

Defendant has not overcome the strong presumption that defense counsel chose not to call the additional witnesses as a matter of trial strategy. Counsel's decisions about whether to call witnesses are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Defense counsel has wide discretion as to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). The failure to present a witness can constitute ineffective assistance only

where it deprives the defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Defendant has not overcome the presumption that defense counsel purposely declined to call defendant's nephew, his deceased brother's fiancée, and two of his brother's friends as a matter of sound trial strategy. It is apparent that counsel was aware of these witnesses because counsel listed them on his notice of alibi that he filed before trial. It is also apparent that counsel was aware of the testimony of at least Helton, Webb, and Hunter because each of those witnesses testified at the previous *Ginther* hearing and counsel referred to the *Ginther* hearing testimony during the lower court proceedings. The failure to call an alibi witness does not constitute ineffective assistance of counsel if counsel reasonably believes that the purported alibi witness will not provide an effective alibi. *People v McMillan*, 213 Mich App 134, 141; 539 NW2d 553 (1995).

Defense counsel reasonably may have believed that calling the four additional alibi witnesses would have been a risky proposition. It would have been reasonable for counsel to anticipate that the prosecutor would question the credibility of those witnesses, and counsel reasonably may have determined that the credibility issues that those witnesses would have presented would seriously undermine any progress defense counsel had made in presenting the alibi defense and discrediting the prosecution's witnesses. The testimony from the prior *Ginther* hearing supports that there were obvious credibility issues with the proposed witnesses, whose testimony sometimes contradicted each other regarding defendant's whereabouts. It was not objectively unreasonable for defense counsel to present those whom he believed were the strongest and most consistent alibi witnesses. Counsel reasonably may have believed that if the four proposed witnesses, who all claimed to have observed defendant's whereabouts at exactly 5:30 p.m., were perceived to be lying, the jury was more likely to disregard the other alibi testimony. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Consequently, defendant has failed to overcome the presumption that defense counsel provided effective assistance at trial.

## II. PERJURED TESTIMONY

Defendant next argues that he is entitled to a new trial because the prosecution knowingly presented and allowed perjured testimony by Johnson and Archer to go forward throughout the trial.

We review claims of prosecutorial error on a case by case basis, examining the challenged conduct in context to determine whether the defendant received a fair and impartial trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

A defendant's right to due process "is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Thus, a prosecutor has "an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *Id.*

### i. DAMIA JOHNSON

Defendant highlights instances where Johnson's testimony about the circumstances surrounding her identification of him at his third trial differed from her testimony in prior trials or was contradicted by another witness, Detroit Police Sgt. Kevin Hanus, to argue that the prosecutor knowingly used perjured testimony at trial. The inconsistencies identified by defendant do not establish that the prosecutor knowingly used perjured testimony to obtain defendant's convictions. *Gratsch*, 299 Mich App at 619; *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Although Johnson's testimony regarding certain details differed from her prior testimony, there is no indication that the prosecutor sought to conceal these inconsistencies from defendant. In fact, the prosecutor noted some of the inconsistencies during trial and, at one point, Johnson admitted that she was not able to remember "everything" after five years.

The prosecutor also questioned Sgt. Hanus about Johnson's "mistaken" testimony regarding a pretrial identification procedure in order to correct Johnson's testimony. In addition, testimony that conflicts with another witness's testimony does not automatically lead to the conclusion that the prosecution knowingly used perjured testimony. See *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds, *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014). Defendant's argument does not involve an issue of perjury, but rather concerns witness credibility. Defense counsel fully explored the inconsistencies with Johnson's testimony, as well as other prosecution witnesses. The jury was free to believe or disbelieve all or any portion of their trial testimony. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

### ii. LAWRENCE ARCHER

Defendant argues that the "testimony of the other eye witness, Lawrence Archer, was perjured." To support this claim, defendant relies on testimony that Archer gave during defendant's second jury trial. During cross-examination, defense counsel asked Archer whether he had intentionally given the police an incorrect year of birth, and Archer twice answered that "maybe [the police] heard it wrong." The following exchange then occurred:

> *Q*. But your birthday is '45?
>
> *A*. January 19—1949.
>
> *Q*. Right. And if someone was looking into your criminal history—
>
> *A*. *I don't have a criminal history.*
>
> *Q*. You don't?
>
> *A*. Come on at (ph).
>
> *The prosecutor*: Judge, and I am going to ask to approach.
>
> *The court:* Parties approach. [(Emphasis added).]

-5-

At the third trial, the trial court excluded evidence of Archer's criminal record and the statements Archer made at the second trial concerning his criminal record. In an order denying defendant's motion for a new trial, the trial court summarized what occurred during the second trial and its ruling in the third trial as follows:

> This Court could have struck the question and answer from the record and ordered the jury to disregard both. The Court felt that Defense Counsel's question was clearly an attempt to place evidence about the [sic] Mr. Archer's criminal history before the jury, which is not admissible pursuant to MRE 609. Prior hearings revealed that Defense Counsel already had information about Mr. Archer's criminal history. Over the prosecutor's objection, this Court exercised its discretion and ordered the Prosecutor to produce Mr. Archer's entire LEIN criminal history. The Prosecutor immediately, but unsuccessfully, appealed to the Court of Appeals.

> Upon receipt of the criminal history, this Court, over the Prosecutor's objection, again exercised its discretion and compelled Mr. Archer to testify in front of the jury to his entire criminal history, which would ordinarily be inadmissible under MRE 609. The Court did this despite Mr. Archer's insistence that he did not mean to mislead the Court but believed, based on his interviews with the Prosecutor, that he did not have a criminal history because his convictions were greater than ten years old. The Court also allowed Defense Counsel to question Mr. Archer over approximately nine pages of transcripts about whether his August 3, 2011 answer about not having a criminal history to the jury was a lie or an answer he believed to be true based on his conversation with the Prosecutor. This Court took action because it felt that it was necessary to overcome the impression the jury might have that Mr. Archer did not have a criminal history.

> Before and during Defendant's third trial, the Court ruled that it would not admit Mr. Archer's criminal history as it did at the second trial. Similarly, the Court chose not to allow Defense Counsel to ask Mr. Archer about the statement he made during the second trial that he did not have a criminal history or that he committed perjury. The witness's criminal history was no[t] admissible pursuant to MRE 609. While MRE 608(b) gives the Court discretion to allow inquiry into specific instances of conduct on cross examination, if probative for truthfulness or untruthfulness, this Court decided not to allow it. The probative value of Mr. Archer's prior convictions are minimal and inquiry into this area would confuse the jury, and, in effect, create a trial within a trial. The collateral matter as to whether Mr. Archer committed perjury in the second trial or had a criminal history could confuse the jury about the real issue at hand.

Defendant essentially raises three arguments in that he contends that: (1) the prosecutor committed misconduct by introducing Archer's "perjured testimony;" (2) the trial court erred in excluding evidence of Archer's criminal record, and (3) the trial court erred in excluding the statements Archer made at the second trial.

With respect to defendant's argument concerning the prosecution's introduction of Archer as a witness, defendant's perjury claim is misplaced. Perjury consists of a willful false statement made under oath. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). During defendant's second trial, Archer explained that his testimony denying that he had a prior criminal history was based on his conversations with the prosecutor regarding what constitutes a prior conviction under the court rules. Thus, whether Archer knowingly made a false statement was open to question. But regardless of how Archer's testimony at the second trial is characterized because the issue of Archer's prior criminal history was not introduced or explored at defendant's third trial, there is no basis for concluding that the prosecutor knowingly presented false testimony at the third trial. Defendant's complaint here does not involve an issue of perjury but rather his apparent discontent with the trial court's decision to prohibit, at the third trial, evidence of Archer's prior convictions and inquiry into whether Archer attempted to conceal those convictions during the second trial. These arguments also lack merit.

The trial court did not err in excluding evidence of Archer's criminal record at the third trial. Evidence of prior convictions under MRE 609 is "not admissible if a period of more than ten years has elapsed since the date of the conviction []." MRE 609(c). Defendant does not contend that less than ten years elapsed since the date of the convictions, and he fails to otherwise articulate how the trial court erred in concluding that the convictions were inadmissible under MRE 609. Accordingly, defendant cannot show that the court abused its discretion in excluding evidence of the convictions. See *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998) (a trial court's decision whether to admit or exclude evidence is reviewed for an abuse of discretion).

In both his brief submitted by counsel and in his amended Standard 4 brief, defendant also appears to contend that the trial court erred in excluding evidence that Archer committed "perjury" about his criminal record in the second trial. In reviewing this issue we note that "[b]ecause an abuse of discretion standard contemplates that there may be more than a single correct outcome, there is no abuse of discretion where the evidentiary question is a close one." *People v Smith (On Remand)*, 282 Mich App 191, 194; 772 NW2d 428 (2009). First, contrary to defendant's contention in his Standard 4 brief, Archer's statements at the second trial were not admissible under MRE 609 because the statements did not result in a conviction for perjury. MRE 609 governs admissibility of prior convictions for impeachment purposes, not prior statements. Second, the trial court's determination that inquiring into Archer's statements at the second trial would cause jury confusion did not amount to an abuse of discretion. Under MRE 403, a trial court has discretion to exclude evidence that has a tendency to cause "confusion of the issues." In this case, given that Archer's underlying convictions were not admissible under MRE 609, it was reasonable for the trial court to conclude that inquiry into Archer's prior testimony would confuse the jury in that it would result in an inquiry into Archer's criminal record—which was not admissible under MRE 609. This inquiry would have resulted in a "trial within a trial" to determine whether Archer committed perjury. The court could have reasonably concluded that Archer did not willfully intended to commit perjury given that he explained that he was under the impression that he did not have to disclose a criminal conviction over ten years old. Archer's misunderstanding was reasonable given that, under MRE 609, evidence of his prior convictions there were more than ten years old were in fact inadmissible. See MRE 609(e).

In short, the trial court's exclusion of Archer's prior criminal convictions and prior statements from the second trial did not fall outside the range of reasonable and principled outcomes. *Starr*, 457 Mich at 494.

## III. DENIAL OF MOTION TO SUPPRESS JOHNSON'S IDENTIFICATION

Defendant next argues that the trial court erred in denying his motion to suppress Johnson's identification testimony. Defendant argues that Johnson's in-court identification was tainted by an impermissibly suggestive pretrial identification procedure, which he contended below occurred when Sgt. Hanus supposedly showed defendant's photograph to Johnson before trial. "The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.*

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). "Most eyewitness identifications involve some element of suggestion." *Perry v New Hampshire*, 565 US ___; 132 S Ct 716, 727; 181 L Ed 2d 694 (2012). But "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id.* at 728. Therefore, the "Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Id.* at 729. Where a judicial inquiry is appropriate, the defendant bears the burden of showing that in light of the totality of the circumstances that the procedure used was so impermissibly suggestive that it led to a substantially likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993); *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).

Defendant has not identified any act by law enforcement officers that improperly suggested that defendant was the perpetrator. We are not left with a definite and firm conviction that the trial court erred in finding that there was no police misconduct related to Johnson's identification of defendant, and that defendant's arguments instead related to the reliability of Johnson's identification testimony. *Harris*, 261 Mich App at 51. Defendant conceded at the hearing on his motion to suppress that there was no police misconduct. Defendant's later claim of police misconduct was based on Johnson's trial testimony that Sgt. Hanus showed her defendant's photograph before the first trial, after defendant had been arrested, but that testimony was contrary to her prior testimony. Additionally, Sgt. Hanus consistently testified that Johnson was not shown defendant's photograph after defendant's arrest, which was consistent with Johnson's prior testimony. In fact, the sergeant explained that both he and the prosecutor were surprised when Johnson identified defendant in court at the first trial.

Defendant's arguments regarding Johnson's inconsistent testimony relate to the reliability of Johnson's identification testimony, which is a question for the jury. See *People v Johnson*, 202 Mich App 281, 286; 508 NW2d 509 (1993). The jury was aware that Johnson had not identified defendant as the perpetrator from a photographic array, and that there were

inconsistencies in her description of the perpetrator and her testimony. Defendant was not prevented from exploring these issues at trial, and defense counsel did so. It was up to the jury to determine whether Johnson's identification testimony was reliable and credible in light of the factors identified by defendant. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Because there is no record evidence of any pretrial identification procedure that was unduly suggestive, the trial court did not err in denying defendant's motion to suppress.

## IV. *BRADY* VIOLATIONS

Next, defendant argues that he was denied his right to due process because the prosecutor failed to produce vital evidence, contrary to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We review due process claims, such as those involving allegations of a *Brady* violation, de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

A criminal defendant has a due process right of access to certain information possessed by the prosecution if that evidence might lead a jury to entertain a reasonable doubt about a defendant's guilt. *Lester*, 232 Mich App at 280, citing *Brady*, 373 US 83. "Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule because, if disclosed and used effectively, such evidence 'may make the difference between conviction and acquittal.'" *Lester*, 232 Mich App at 281 (citation omitted). To establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the prosecution suppressed the favorable evidence; and (3) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *Chenault*, 495 Mich at 150.

Defendant has not established that the prosecutor committed a *Brady* violation. Defendant appears to base his claims on past incidents during his earlier trials. Defendant does not identify any new information that was not provided to the defense before his third trial. With regard to defendant's first claim, the record discloses that the defense possessed all of the composite sketches that were created by the police artist. The sergeant in charge of the case turned them over to the prosecution as soon as he located them, which was well before the third trial. The prosecution presented as witnesses both the sergeant who drove Johnson to meet with the police graphic artist, as well as the police graphic artist himself, who testified about the development of the composite sketches. The record further supports that the composites were turned over to the defense. Defense counsel used them to question witnesses throughout the third trial. Thus, the record does not support defendant's claim that the prosecution withheld the composites, any information surrounding their development, or any other information related to an identification procedure.

Defendant has not identified what evidence and information related to Archer's alleged "perjury about his criminal record" was withheld by the prosecution. The fact that Archer had prior convictions was disclosed during the second trial, and the matter was discussed and revisited before and throughout the third trial. During defendant's second trial, the prosecution was ordered to produce Archer's criminal history, and it did so. Defendant has not indicated what additional information about Archer's prior convictions was not produced. Likewise, defendant has not indicated what "evidence and information involving the [alleged] perjury behind the alleged eyewitness stories of the incident" was withheld. Defendant has not offered

any proof beyond his mere supposition that any such evidence exists, let alone that the prosecution concealed any information. Defendant's speculative claims based on a *Brady* violation necessarily fail.

## V. DEFENDANT'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant invites this Court to revisit its prior decision denying on the merits his four motions to remand.[3] The law of the case doctrine precludes this Court from revisiting these same issues. *People v White*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 315579, issued October 23, 2014), slip op at 2; *People v Hayden*, 132 Mich App 273, 297; 348 NW2d 672 (1984). If defendant disagreed with the prior decision, he should have filed an application for leave to appeal that decision to the Supreme Court. *People v Douglas*, 122 Mich App 526, 529; 332 NW2d 521 (1983).

In a late-filed motion in this Court, defendant moved to add three additional issues to his Standard 4 brief and this Court granted the motion.[4] We address those issues below.

Defendant contends that his conviction violated the Double Jeopardy Clause of the United States Constitution. This argument lacks merit.

"The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). Here, defendant was not acquitted for the charged offense, and double jeopardy "does not bar reprosecution after a defendant's original conviction has been reversed on appeal" unless the reversal is for insufficiency of the evidence. *Payne*, 285 Mich App at 201, citing *Green v United States*, 355 US 184, 189; 78 S Ct 221; 2 L Ed 2d 199 (1957). In this case, although defendant's conviction following the first trial was reversed on appeal, it was not reversed for insufficient evidence; therefore, the prosecution was free to reprosecute defendant for the same offense. *Payne*, 285 Mich App at 201.

Similarly, the hung jury in the second trial did not preclude defendant from being tried in the third trial. "If the trial is concluded prematurely, a retrial for that offense is prohibited unless the defendant consented to the interruption or a mistrial was declared because of a manifest necessity." *People v Mehall*, 454 Mich 1, 4-5; 557 NW2d 110 (1997). "One circumstance that constitutes a manifest necessity is the jury's failure to reach a unanimous verdict. When this occurs, and the trial court declares a mistrial, a retrial is not precluded because the original

---

[3] *People v Akram*, unpublished order of the Court of Appeals, entered July 22, 2014 (Docket No. 315402).

[4] *People v Akram*, unpublished order of the Court of Appeals, entered March 6, 2015 (Docket No. 315402).

jeopardy has not been terminated, i.e., there has not been an assessment of the sufficiency of the prosecution's proofs." *Id.* Here, the second trial ended in a mistrial after the jury deadlocked. Accordingly, retrial was not precluded. *Id.*

In his double jeopardy analysis, defendant repeatedly asserts that Johnson offered "perjured" testimony at his third trial by citing inconsistencies in her testimony. As discussed above, this argument is devoid of merit. An inconsistency in witness testimony does not automatically lead to the conclusion that the prosecution knowingly used perjured testimony. See *Lester*, 232 Mich App at 278-279. Defendant's argument does not involve an issue of perjury, but rather concerns witness credibility and as noted above, the jury was free to believe or disbelieve all or any portion of Johnson's trial testimony. *Wolfe*, 440 Mich at 514.

Next, defendant contends that he was denied his Sixth Amendment right of confrontation because the trial court excluded evidence that Archer mischaracterized his criminal record at the second trial. "The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination." *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). Here, the trial court did not admit any out-of-court testimonial statements in violation of the Confrontation Clause. To the extent that defendant contends that he had a constitutional right to present Archer's prior testimony during cross-examination, we conclude this argument lacks merit. A defendant's right to present a defense is "not unlimited and subject to reasonable restrictions," and an "accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). As discussed above, the trial court did not abuse its discretion in excluding evidence of Archer's prior testimony under the rules of evidence. Thus, defendant was not denied his right to present a defense.

Finally, defendant argues that he was denied his right to due process and a fair trial when the trial court refused to sequester a police officer who testified for the prosecution. Defendant's argument is incoherent. Specifically, the majority of defendant's argument appears to be based on the trial court's rulings during his first or second trials. Because these rulings are wholly unrelated to the third trial that gave rise to this appeal, defendant's arguments are devoid of legal merit. To the extent that defendant contends that the trial court refused to sequester a witness in the third trial, we conclude defendant fails to cite anywhere in the record where the court denied a motion to sequester a witness and otherwise fails to develop a coherent argument. Thus, defendant has abandoned this aspect of his appeal. See *People v Kelly*, 231 Mich App 627; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.") Moreover, defendant cannot show that the failure to sequester the police officer resulted in prejudice; accordingly, defendant is not entitled to any relief on this issue.

Affirmed.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello