# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

BRIAN DWIGHT PETERSON,

       Defendant-Appellant.

UNPUBLISHED
May 28, 2015

No. 320079
Kalamazoo Circuit Court
LC No. 2012-001591-FC

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

Defendant was charged with open murder, MCL 750.316. Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317, and the trial court sentenced him as a second-offense habitual offender, MCL 769.10, to 20 to 50 years in prison. Defendant appeals by right and we affirm.

Defendant's conviction arose from the violent death of Luke Vincent. Vincent was killed at the home of his girlfriend, Christiana Rohall. Defendant, who also lived in the home, and his girlfriend, Lindsey West, were attempting to sleep in defendant's bedroom on October 21, 2012, when Vincent and Rohall returned to the home, intoxicated, and began arguing loudly in the living room. West testified that this was not a rare occurrence. Indeed, on at least two occasions, she and defendant had left the home and spent the night in a hotel room, which she stated irritated defendant because he had to pay for a hotel room when he had a bedroom in the home.

On this night, West and defendant could hear Vincent and Rohall arguing and West mentioned that she was going to get a hotel room. West testified that, at least once, defendant left the bedroom and asked Vincent and Rohall to stop. She stated that subsequently she and defendant heard a blow and a body fall. Then, they heard Rohall ask Vincent why he hit her. West testified that defendant then grabbed a dumbbell and walked out of the bedroom. West asked defendant what he was doing, but defendant ignored the question and walked into the living room, after which West heard him say "are you fucking kidding me, Luke."

The police later found Vincent's body on the floor of the living room, which was separated from defendant's bedroom by the kitchen. Forensic testimony was introduced at trial establishing that Vincent died from at least three blunt force injuries to the head and that these injuries were inflicted by a hexagonal object, such as the end of a dumbbell. Dumbbells

-1-

weighing 20 pounds were recovered in the living room. Blood found on the dumbbell located nearest Vincent's body matched Vincent's DNA.

## I. OPINION ON GUILT

Defendant argues that Detective Sheila Goodell, who interviewed defendant, improperly commented on defendant's guilt when she testified that his demeanor during the interview was defensive and that, during the interview, she told defendant that he was lying. Defendant is precluded from arguing that this testimony by Goodell was improper. Defense counsel consented to the question about defendant's demeanor,[1] and he asked Goodell whether she told defendant he was lying. A defendant may not assign error on appeal to something his own counsel deemed proper. *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995).

Defendant also argues that Goodell offered an opinion on defendant's guilt when she testified that defendant's explanation that a television may have fallen on Vincent "did not make sense" and it was a "problem" that defendant did not offer who he thought killed Vincent.[2]

A witness may not opine on a defendant's guilt or innocence. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). A defendant is entitled to have the jury decide his guilt. *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). However, Goodell's testimony that defendant's explanation that the television may have fallen on Vincent "did not make sense" was not an opinion on defendant's guilt. Goodell did not testify that, because defendant's explanation did not make sense to her, she concluded that he was guilty. Rather, she explained that because defendant's explanation did not make sense, she asked him additional questions. Goodell was explaining the steps she took in the interview and the jury was clearly informed of this fact. Similarly, Goodell's testimony that it was a "problem" that defendant did not offer who he thought killed Vincent was not an opinion on defendant's guilt. Goodell did not testify that, because defendant never stated who he thought killed Vincent, she concluded that he was guilty. In fact, Goodell never explained why it was a problem that defendant never opined as to who he thought committed the crime. There was no plain error.

Alternatively, defendant argues that his counsel was ineffective for not objecting to the challenged testimony of Goodell. To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of

---

[1] The question regarding defendant's demeanor originated from a question submitted by a juror. Although defense counsel objected to the question posed by the juror, when the trial court changed the question to ask about defendant's demeanor, defense counsel consented to it.

[2] Because defendant did not object at trial to this testimony by Goodell, the issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review unpreserved claims of evidentiary error for plain error affecting defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). Plain error, which is error that is obvious or clear, affects a defendant's substantial rights when it affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of defendant's trial would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008).

Defense counsel was not ineffective for failing to object to Goodell's testimony that defendant's explanation "did not make sense" and it was a "problem" that defendant never offered who he thought killed Vincent because, as discussed, those statements were not opinions on defendant's guilt. Thus, any objection to the testimony would have been futile and counsel is not ineffective for failing to make meritless objections. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).

Defense counsel also was not ineffective for consenting to the question about defendant's demeanor. General testimony regarding a defendant's demeanor during a police interview is not an opinion on the defendant's guilt. Because any objection to the question would have been futile, counsel was not ineffective for failing to make the objection. *Id.* Finally, defense counsel was not ineffective for asking Goodell whether she told defendant that he was lying. Counsel asked the question almost immediately after Goodell testified that defendant was defensive in the interview. There was a strategic reason for the question. By eliciting Goodell's testimony that she told defendant he was lying, counsel gave the jury a nonincriminating explanation for defendant's defensive demeanor. Defendant has failed to overcome the presumption that counsel's questioning of Goodell was sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

## II. FIRST-DEGREE MURDER CHARGE

Defendant argues that the trial court erred when it submitted a charge of first-degree murder to the jury because there was no evidence from which the jury could have found that the murder of Vincent was premeditated and deliberate. He further claims that this asserted error was prejudicial because his second-degree murder conviction was likely the result of a compromise verdict.[3]

When a defendant is charged with open murder, he may be convicted of first-degree murder or second-degree murder. MCL 750.318; *People v Watkins*, 247 Mich App 14, 20; 634 NW2d 370 (2001), aff'd 468 Mich 233 (2003). The elements of first-degree murder are (1) the defendant intentionally killed the victim and (2) the killing was premeditated and deliberate. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Second-degree murder is first-degree murder minus premeditation and deliberation. *People v Carter*, 395 Mich 434, 437-438; 236 NW2d 500 (1975). "To premeditate is to think about before hand; to deliberate is to measure and evaluate the facts of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (quotation omitted). Premeditation and deliberation require that, at minimum, the defendant had sufficient time to take a second look and characterizes a thought

---

[3] Because defendant did not move for a directed verdict on the first-degree murder charge, this issue is unpreserved, see *People v Lugo*, 214 Mich App 699, 710-711; 542 NW2d 921 (1995), and we review it for plain error affecting substantial rights, *Carines*, 460 Mich at 763.

process undisturbed by hot blood. *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). Premeditation and deliberation may be inferred from all the facts and circumstances surrounding the murder. *Id*. Factors that may indicate premeditation and deliberation include (1) the parties' prior relationship, (2) the defendant's actions before and after the killing, and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted. *Plummer*, 229 Mich App at 300.

A defendant is entitled to a directed verdict on a charge if the evidence, when viewed in a light most favorable to the prosecution, would not allow a rational trier of fact to find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). It is the province of the jury to determine questions of fact and assess the credibility of witnesses. *Aldrich*, 246 Mich App at 124.

Evidence introduced at trial suggested that defendant was frustrated with Vincent because Vincent and Rohall were arguing, that defendant had taken unsuccessful action to get them to stop, that West suggested another course of action, and that defendant, after he was asked by West what he was doing, walked into the kitchen holding a dumbbell. Viewing this evidence in a light most favorable to the prosecutor, a rational trier of fact could find beyond a reasonable doubt that defendant had sufficient time to take a second look at his actions. *Gillis*, 474 Mich at 113. Defendant was not entitled to a directed verdict on the first-degree murder charge, and, therefore, the trial court did not plainly err by submitting that charge to the jury. Even if the court did err, defendant was properly convicted of second-degree murder, as discussed below, and our Supreme Court has held that "a defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury." *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998).

We also reject defendant's argument that his trial counsel was ineffective for failing to move for a directed verdict on the first-degree murder change. Because, as discussed, defendant was not entitled to a directed verdict on the charge, any motion would have been futile. *Eisen*, 296 Mich App at 329.

### III. GRUESOME PHOTOGRAPHS

Defendant claims that the admission of autopsy and crime scene pictures showing Vincent's dead body and head injuries denied him a fair trial.[4] Because defense counsel either stipulated or consented to the admission of the challenged pictures, defendant is precluded from assigning error to their admission. *Barclay*, 208 Mich App at 673. However, defendant argues that counsel was ineffective for failing to object to the admission of the pictures.

Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403. *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330

---

[4] These pictures are contained in the record before this Court and have been reviewed by the panel.

(2009). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

When a defendant pleads not guilty, all elements of the offense are at issue, and the prosecution must prove each element beyond a reasonable doubt. *People v Mills*, 450 Mich 61, 69-70; 537 NW2d 909 (1995). At issue in the present case was, among other things, defendant's intent. See *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998); *Bennett*, 290 Mich App at 472. The autopsy pictures were essential to proving defendant's intent. See *Mills*, 450 Mich at 71. The fact that Vincent had three injuries to his head, including a depressed skull fracture, made it more probable that the acts of whoever struck Vincent were done with the intent to kill or cause great bodily harm. See *id.* Additionally, the pictures were relevant because they assisted the jury in determining the credibility of Dr. Michael Markey, the forensic pathologist who performed the autopsy on Vincent and testified about his injuries. See *id.* at 72-73.

Replicas of two autopsy pictures were also admitted during the testimony of Tracy Cochran, a crime laboratory technician. Cochran testified that the length of the injury to the right side of Vincent's head was 2-1/2 inches long and that the angles in tears to the skin on the right side and back of Vincent's head were 123 and 125 degrees. The two replicas were relevant because they showed where the measurements were taken and assisted the jury in determining whether the dumbbell was the murder weapon and assessing Cochran's credibility. *Id.* at 73. Rather than depending solely on the testimony of Cochran regarding the measurements, the jury was entitled to view where the measurements were taken. *Id.* at 72-73.

Photographs may be used to explain and corroborate the testimony of witnesses. See *Gayheart*, 285 Mich App at 227. The crime scene pictures explained and corroborated witness testimony, such as testimony from Officer Brian Veltman and Sergeant Scott Miller that a television was on the ground near the television stand, there was five feet between Vincent and the television, and there was a dumbbell near Vincent. In addition, the pictures, which depicted pools of blood, explained and corroborated Cochran's testimony that there was a slope to the floor, blood ran from Vincent to the television, and there was no evidence that the television fell on Vincent. The pictures, which enabled the jury to see the crime scene, rather than having to rely solely on the testimony of witnesses, were relevant because they had a tendency to make a fact of consequence, i.e., whether Vincent was struck with a dumbbell, more probable. MRE 401.

It is true that several of the challenged pictures are gruesome. However, gruesomeness does not necessarily require exclusion of relevant pictures under MRE 403. *Mills*, 450 Mich at 76. "The proper inquiry is always whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice." *Id.* Here, the danger of unfair prejudice did not substantially outweigh the high probative value of the autopsy and crime scene pictures.

Because the autopsy and crime scene pictures were relevant and their relevancy was not substantially outweighed by their prejudicial impact, any objection to their admission would have been futile, and defendant's counsel was not ineffective for failing to make a futile objection. *Eisen*, 296 Mich App at 329.

## IV.  DEFENDANT'S STANDARD 4 BRIEF

### A.  POLICE MISCONDUCT

Defendant argues that he was denied a fair trial by police misconduct.[5]  Defendant specifically claims that the police engaged in misconduct when they did not collect the sweatshirt Rohall was wearing and when they allowed her to wash her hands before taking pictures of them. The failure to preserve potentially useful evidence does not constitute a denial of the defendant's right to due process unless there was bad faith on the part of the police. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988).  Defendant does not claim that the police acted in bad faith and nothing in the record indicates such bad faith.  Accordingly, this argument is without merit.

Defendant also claims that Goodell's decision not to speak with Rohall until nine days after Vincent's death could constitute a violation of due process.  Defendant fails to explain this argument, including how Goodell's decision prejudiced him or affected the outcome of the trial, and we discern no colorable argument meriting relief after reviewing the record.  See also *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Defendant claims that he was placed in custody in violation of his Fourth Amendment rights.  The Fourth Amendment guarantees the right of persons to be secure against unreasonable searches and seizures. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005).  A "seizure" of a person occurs if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *Id.* at 32.  Because there was evidence that defendant agreed to voluntarily go to the police station and speak with a detective, there is little indication that defendant was "seized" with the meaning of the Fourth Amendment and, in any event, there is no indication that this allegedly unconstitutional "seizure" affected the outcome of defendant's trial. *Carines*, 460 Mich at 763.

Next, defendant asserts that the police committed misconduct because they prohibited him from receiving and sending mail while he was at the county jail.  Nothing in the lower court record indicates that defendant was, in fact, prohibited from receiving and sending mail; thus, we reject defendant's argument.[6]

Defendant claims that Goodell engaged in unconstitutional tactics by (1) threatening defendant to go "balls to the wall" to prosecute him if he did not confess and denying making

---

[5] Because defendant did not raise his claims of police misconduct before the trial court, the claims are unpreserved, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), and reviewed for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

[6] Defendant did attach, as an exhibit to his Standard 4 brief, a search warrant that authorized the search of his incoming and outgoing mail.  However, defendant makes no argument that this warrant was improperly granted or otherwise deficient.

this threat at trial, (2) threatening West that she would be charged with perjury and sent to prison for life if she changed her story, and (3) contacting West's mother in order to create a rift between defendant and West. There is nothing in the lower court record indicating that Goodell made these alleged threats to defendant and West. While defendant has submitted a police report detailing a phone conversation between Goodell and West's mother, there is no indication that this conversation was conducted in an improper attempt to create a rift between defendant and West. Accordingly, we reject these arguments.[7]

## B. PROSECUTORIAL MISCONDUCT

Defendant also argues that he was denied a fair trial by prosecutorial misconduct.[8]

Defendant claims that the prosecutor improperly vouched for the credibility of West and Cochran in his closing argument. A prosecutor may not vouch for the credibility of a witness or suggest that the government has some special knowledge that a witness is testifying truthfully. *People v Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, when the prosecutor's challenged comments are reviewed in context, *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003), it is clear that he was not vouching for the credibility of West and Cochran, but was arguing the evidence and inferences as they related to his theory of the case. Accordingly, there was no error. *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004).

Defendant also claims that the prosecutor confused the jury, asked questions about the relationship between defendant and Vincent after the trial court ruled that he could not ask "hearsay questions," and asked irrelevant questions about rent payments. On the transcript pages cited by defendant, after defense counsel objected to questions asked by the prosecutor, the trial court heard arguments and an offer of proof. It sustained the objections. A finding of prosecutorial error may not be based on a good-faith effort to admit evidence. *People v Abraham*, 256 Mich App 265, 278; 662 NW2d 836 (2003). Defendant makes no argument that the prosecutor's questions, although the trial court sustained objections to them, were asked in bad faith. Regardless, because the trial court sustained the objections to the questions, defendant cannot establish that the questions affected the outcome of the proceedings. *Carines*, 460 Mich at 763.

Defendant next claims that the prosecutor appealed to the jury to sympathize with Vincent and his family. A prosecutor may not appeal to the jury to sympathize with the victim. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Defendant does not specify

_____

[7] Any argument concerning Jaclyn Beavolin and Stacy Wendzel is abandoned. Defendant has left it to this Court to discover and rationalize the basis for any claim of error regarding these two women. *Kelly*, 231 Mich App at 640-641.

[8] Because defendant never objected to the alleged instances of misconduct, these claims are unpreserved, *Bennett*, 290 Mich App at 475, and we review them for plain error affecting substantial rights, *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

what comments by the prosecutor constituted improper appeals to the jury's sympathy and, having reviewed the record, we find no error in this regard.

Defendant additionally claims the prosecutor violated the dictates of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by suppressing the transcript of Goodell's interview with defendant and failing to introduce a recording of the interview into evidence. To establish a *Brady* violation, a defendant must show that the prosecutor suppressed evidence that was favorable to the accused and material. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). We find no merit to defendant's argument. Defendant provides no authority supporting the proposition that *Brady* and its progeny required the prosecutor to introduce or provide evidence in a certain manner, nor does he provide any authority for the proposition that a defendant must be given a *transcript* of a recorded interview. See MCR 6.201(B)(3).[9]

Defendant next claims that the prosecutor denied him his right to a speedy trial when he unnecessarily delayed trial in order to receive the DNA analysis of swabs taken from the dumbbells. Defendant has given the issue cursory treatment and has cited no authority in support. Nonetheless, having reviewed the record and defendant's claim, we reject it. See *Kelly*, 231 Mich App at 640-641.

Defendant finally claims that the prosecutor failed to correct the false testimony (1) of Goodell that she did not threaten defendant that she would go "balls to the wall" to convict him if he did not confess and (2) of West that she stopped speaking with defendant in December 2012.[10] A prosecutor has a duty to correct false testimony. *People v Lester*, 232 Mich App 262, 277; 591 NW2d 267 (1998), overruled in part on other grounds *People v Chenault*, 495 Mich at 142. We find no merit to defendant's argument because there is no evidence in the record to indicate that this challenged testimony was false.

## C. SUFFICIENT EVIDENCE

Defendant next argues that his conviction for second-degree murder was not supported by sufficient evidence.[11] In analyzing this claim, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the prosecutor proved the elements of the crime beyond a reasonable doubt. *Cline*, 276 Mich App at 642. The elements of an offense may be established by circumstantial evidence and reasonable inferences

---

[9] Defendant also claims that the prosecutor suppressed evidence by not collecting Rohall's sweatshirt. However, the sweatshirt was not suppressed; it was never collected by the police.

[10] Defendant also claims that the prosecutor failed to correct the "false testimony that state witness Christiana Rohall was in fact pushed by Luke Vincent and told police so." Because defendant does not state which witness gave this alleged false testimony, we are unable to analyze the claim.

[11] We review do novo a challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007).

drawn therefrom. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). It is the jury's duty to determine the weight to be accorded any inferences. *Id.*

"[T]he elements of second-degree murder are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Malice is the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Goecke*, 457 Mich at 464. A defendant's intent may be inferred from circumstantial evidence, including the weapon used. *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014). Minimal circumstantial evidence is sufficient to prove the defendant's intent. *Id.*

Vincent died within minutes of the assault. Markey testified that he suffered three significant injuries to his head, each of which was caused by a separate impact. The injury to the right side of Vincent's head involved a depressed skull fracture. A depressed skull fracture is generally the result of a "concentrated blow" from an object with "a relatively small surface area." According to Cochran, the injury to the right side of Vincent's head was 2-1/2 inches long and an angle in a tear to the skin was 123 degrees. Additionally, the injury to the back of Vincent's head had a tear to the skin with a 125-degree angle. Cochran also testified that the hexagons on the end of the dumbbells seized from the living room were 2-1/2 inches long and that the angles in the hexagons were 120 degrees. After West and defendant heard Rohall ask Vincent why he hit her, defendant picked up a dumbbell and left the bedroom. West believed, although she was not sure, that she heard a loud crash after defendant walked out of the bedroom. Blood was found on the dumbbell nearest Vincent's body, and Vincent's DNA matched the DNA found in the blood. Cochran testified that there was a slope to the living room floor and that blood from Vincent flowed to the television. He found no evidence that the television fell on Vincent and he did not believe that the television could have made the indent in Vincent's head. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Vincent died and that he died as a result of an act by defendant, i.e., defendant hitting him with a dumbbell. *Cline*, 276 Mich App at 642.

As discussed, the evidence indicated that defendant was increasingly frustrated with Vincent and Rohall's continued arguing, futilely attempted to get them to stop at least once, and, over West's objections, confronted Vincent after leaving the bedroom carrying a dumbbell. Viewing this evidence, as well as the evidence that the dumbbells found in the living room weighed 20 pounds and that Vincent was struck in the head at least three times, a rational trier of fact could have found beyond a reasonable doubt that defendant, in striking Vincent with the dumbbell, acted with malice. *Id.* Accordingly, defendant's conviction for second-degree murder was supported by sufficient evidence.

## D.  GREAT WEIGHT OF THE EVIDENCE

Defendant also claims that the jury's verdict was against the great weight of the evidence.[12]  A verdict is against the great weight of the evidence when the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.  *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).  A verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence.  *Id.*  For the same reasons that defendant's conviction for second-degree murder was supported by sufficient evidence, the evidence reasonably supported the jury's verdict.  Accordingly, the verdict was not against the great weight of the evidence.

## E.  INCONSISTENT TESTIMONY

Defendant claims that he is entitled to a new trial because testimony given by West and Rohall was inconsistent with statements they had made before trial.[13]

The credibility of witnesses is a question for the jury, *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009), and questions about the credibility of witnesses are not sufficient grounds for granting a new trial, *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998).  Absent extraordinary circumstances, such as where testimony was so far impeached that it was deprived of all probative value, a court must defer to a jury's credibility determinations.  *Id.* at 645-646.  The jury was made aware of alleged prior inconsistent statements by West and Rohall and these prior inconsistent statements did not deprive the testimony of West and Rohall of all probative value.  Accordingly, we may not interfere with the jury's credibility determinations and we reject defendant's argument.

## F.  JUROR ERRORS

Defendant argues that he is entitled to a new trial because the jurors failed to follow the trial court's instruction that, before they reached a unanimous verdict, they were not to let anyone know how they were voting.[14]  On the second day of deliberations, the jurors asked the trial court what they should do because they were split five to seven.  Thus, the jurors arguably did not obey the trial court's instruction.  However, defendant makes no legally supported

---

[12] Because defendant did not move for a new trial on the basis that his conviction for second-degree murder was against the great weight of the evidence, the issue is unpreserved, and we review it for plain error affecting defendant's substantial rights.  *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

[13] Because this argument was never raised before the trial court, it is unpreserved, *Metamora Water Serv, Inc*, 276 Mich App at 382, and we review it for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

[14] We review this unpreserved issue for plain error affecting defendant's substantial rights.  *Carines*, 460 Mich at 763.

argument that the jurors' failure to obey the instruction entitles him to relief and, having reviewed the record, we find no merit to defendant's contention. See *Kelly*, 231 Mich App at 640-641.

Defendant also argues that the trial court erred when, at the end of the second day of deliberations and after the jury had indicated it was split, it dismissed a juror who was going on vacation and replaced the juror with an alternate juror instead of declaring a mistrial.[15] Pursuant to MCR 6.411, a trial court may replace a juror with a retained alternate juror after the jury has begun its deliberations. Defendant provides no legal authority for the proposition that, after a jury has indicated it is split, a trial court may not replace a juror with an alternate juror for a reason unrelated to the jury split. Thus, we reject this argument.

## G. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the effective assistance of counsel because his trial counsel (1) did not obtain a recording of Goodell's interview of defendant, (2) failed to cross-examine West about when she last paid counsel and about Goodell's threat that she could be charged with perjury, and (3) not letting him, but letting West, listen to recordings of the 911 calls. A defendant has the burden of establishing the factual predicate for an ineffective assistance claim, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and defendant has not established the factual predicates for these claims. There are simply no facts on the record establishing that counsel failed to obtain a recording of Goodell's interview;[16] that West, contrary to her testimony, continued to pay defense counsel after December 2012; that Goodell threatened West; and that counsel let West, but not defendant, listen to the 911 tapes. Thus, defendant's claims are without merit.

Affirmed.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro

---

[15] Because this issue was not raised by defendant below, it is unpreserved, *Metamora Water Serv, Inc*, 276 Mich App at 382, and reviewed for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

[16] Additionally, because a recording of the interview was never made part of the record, it is not apparent from the record that, as claimed by defendant, Goodell threatened defendant to go "balls to the wall" to prosecute him and continued to question him after he asked for an attorney.