# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 7, 2016

Plaintiff-Appellee,

v

No. 322133
Berrien Circuit Court
LC No. 2013-004526-FC

ANTHONY DANIEL WALKER,

Defendant-Appellant.

Before: MARKEY, P.J., and OWENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Anthony Daniel Walker, was convicted by a jury of two counts of armed robbery, MCL 750.529; assault with intent to rob while armed, MCL 750.89; felon-in-possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227(b). Defendant was sentenced to 35 to 100 years' imprisonment on each of his armed robbery and assault with intent to rob while armed convictions, 76 to 240 months' imprisonment on his felon-in-possession of a firearm conviction, and 2 years' imprisonment for his felony-firearm conviction. He appeals as of right. We affirm.

These convictions arose out of an armed robbery that occurred on October 14, 2013, at 1011 Lavette Street in Benton Harbor, MI. Na'eisha Dudley, Shabree Batty, and Damarcus Hockett arrived together to meet defendant at this location. The three other individuals and defendant went into the house and began watching TV in the living room. Na'eisha stated that defendant was walking back and forth between the living room and a bedroom in which another man was located.

Soon after, defendant entered the living room with a gun and told Hockett and Batty to "get down." The other man began to go through Na'eisha's pockets and took her keys, cellular telephone, and a little bag of marijuana. After the man took these items from Na'eisha, he pointed the gun at her and said, "you too." Defendant then stated, "I don't even know why you took this chance . . . I'm going to have fun with you, too." The other man then went up to Hockett and started taking off Hockett's pants and shoes. He then took Hockett's cell phone from his pocket.

At this point, Na'eisha testified that Batty stood up and "rushed defendant," who was still holding the gun in his hand. A fight ensued. Na'eisha testified that Hockett and the other man began to fight. Na'eisha ran outside, observed some people on a porch across the street, and

-1-

asked if she could use their phone to call 911 and one of the people gave her their phone. Kenneth Bell, one of the individuals on the porch, testified that he heard a "great commotion inside the house," which sounded like something was knocked over and glass was broken.

While Na'eisha waited for police, she observed Hockett run out of the house and down the street without pants or shoes. She further testified that defendant followed Hockett out of the house and pointed the gun at him. Bell corroborated both of these statements.

When the police arrived at the home, Na'eisha, Batty, and Hockett were outside the house. Officer Harmon observed that Hockett was shoeless, and that Batty and Hockett appeared "excited", "scared", and had a "sense of fear on their faces." The officers also testified that it looked as though a struggle had occurred inside the house. Furthermore, there was a hat recovered inside the home that Na'eisha testified belonged to defendant. The hat had DNA that matched the defendant's.

At trial, neither Batty nor Hockett testified. Further, the unidentified man in the home did not testify, and defendant would not reveal his last name. It was further discovered that defendant on numerous occasions attempted to give money to Na'eisha. Defendant testified that it was to pay for the marijuana stolen from her pants pocket during the robbery. However, Na'eisha stated that it was likely to convince her not to testify against defendant. The jury subsequently found defendant guilty on the above mentioned charges, and this appeal followed.

## I. DID THE PROSECUTOR DEPRIVE DEFENDANT OF DUE PROCESS OF LAW AND A FAIR TRIAL?

Defendant first argues that the prosecutor committed misconduct by suppressing evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Defendant argues for the first time on appeal that the prosecutor violated *Brady*; therefore, this issue is reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. Thus, the three components of a *Brady* violation are "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014).[1]

Defendant advances several *Brady* claims on appeal. First, he argues that the prosecutor violated *Brady* by failing to discover video surveillance at Campus Q, a local pool hall, which

---

[1] Both plaintiff and defendant improperly cited the four-factor test in *People v Lester*, 232 Mich App 262, 281-282; 591 NW2d 267 (1998), as the test to determine if there was a *Brady* violation. The Court in *Chenault* overruled *Lester*, rejecting its addition of a diligence requirement to *Brady*. *Chenault*, 495 Mich at 152. Specifically, it rejected the requirement that a defendant claiming a Brady violation could not have obtained the evidence with reasonable diligence. See *Lester*, 232 Mich App at 281-282.]

would have allegedly supported defendant's testimony. Defendant claims he met Na'eisha at Campus Q for a drug transaction the night before the charged offenses occurred. Na'eisha denied meeting defendant there. The record supports that defendant requested video surveillance from Campus Q in a letter to his attorney. The prosecutor was notified of defendant's request and had Detective Wes Smigielski investigate the potential video evidence. However, Detective Smigielski could not obtain video surveillance from Campus Q because it was unavailable. Accordingly, because this evidence was never within the prosecutor's control, it was not suppressed. *Id.*

Defendant also claims a *Brady* violation based on the prosecutor's failure to produce the other two victims, Batty and Hockett, as witnesses at trial.[2] However, there is no evidence that the prosecutor kept the names of these witnesses from defendant. Defendant was made aware of Batty and Hockett on the prosecutor's initial witness list; however, they were not listed as witnesses that the prosecutor intended to call at trial. Nothing in the record supports—and defendant does not argue—that he requested the prosecutor to secure their presence at trial. See *People v Koonce*, 466 Mich 515, 521; 648 NW2d 153 (2002) (indicating that the prosecutor must provide reasonable assistance to the defendant, upon request, to secure defense witnesses for trial).

Moreover, there is no indication that Batty or Hockett would have testified favorably for the defense, given that they were listed as victims to the charged crimes. Therefore, even if this testimony was suppressed by the prosecutor, there is no indication that it would have been favorable to the accused. In fact, the absence of the two victims may have been beneficial to the defendant because it left only one victim to discredit and eliminated two other eye witnesses and defense counsel argued during closing statements that the absence of the other two victims could indicate that Na'eisha's testimony was false. Therefore, defendant's *Brady* challenge with respect to these two witnesses fails.

The next *Brady* violation alleged by defendant concerns Na'eisha's telephone records. There was no evidence that the prosecutor ever obtained Na'eisha's telephone records and failed to disclose them to defendant. See *People v Bosca*, ___ Mich App ___; ___ NW2d ___ (Docket No. 317633, issued March 26, 2015); slip op at 13-14 (finding no suppression of evidence where the prosecutor never obtained the victims' telephone records; thus, "there existed no necessity to provide them to [the] defendant"). The record does indicate that the defendant requested the phone records initially. The prosecutor, however, stated that he was "not committing to" obtaining Na'eisha's telephone records. He stated that her records were not a part of the initial

---

[2] Under MCL 767.40a, the prosecutor is required to advise the defendant of known witnesses who might be called at trial and other known res gestae witnesses. *People v Burwick*, 450 Mich 281, 287; 537 NW2d 813 (1995). However, a prosecutor does not have a duty to discover and produce all res gestae witnesses. *People v Perez*, 469 Mich 415, 419; 670 NW2d 655 (2003). Rather, the prosecutor must provide reasonable assistance to the defendant, upon request, to secure defense witnesses for trial. *People v Koonce*, 466 Mich 515, 521; 648 NW2d 153 (2002); MCL 767.40a(5).

request made to the telephone company, and it would take another search warrant to obtain them. Thereafter, the trial court requested that the prosecutor speak with defense counsel, and then they could decide whether another search warrant needed to be executed.

"The prosecution is not required to 'seek and find exculpatory evidence' or assist in building or supporting a defendant's case, nor is it required to 'negate every theory consistent with defendant's innocence.' " *Id.*, quoting *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). Further, even if the telephone records were within the prosecutor's control, defendant fails to establish that they would have been favorable or material to the outcome of his trial. *Chenault*, 495 Mich at 150. Defendant asserts he would have used the records to impeach Na'eisha's testimony. However, it is unlikely that this evidence would have undermined Na'eisha's testimony in a material way. The evidence offered to corroborate Na'eisha's testimony was overwhelming. There were multiple witnesses, the defendant's own phone records, and the officers' testimony. Therefore, even though defendant requested the record initially, there is no indication that the records were further sought by him, possessed by the prosecution, or that the phone records would have been favorable to defendant.

Defendant next argues that the prosecutor and police failed to investigate the involvement of Tanganyika Dudley, Na'eisha's mother. However, defendant fails to demonstrate that the prosecutor suppressed any evidence concerning Tanganyika. *Id.* She testified at trial, and defendant was provided the opportunity to cross-examine her. Thus, defendant failed to establish plain error affecting substantial rights with respect to Tanganyika's involvement in the case. *Carines*, 460 Mich at 763.

Defendant's final *Brady* claim concerns the testimony of "Trey" and "Renee," two witnesses who were allegedly with defendant at the house where the offenses occurred. After initially refusing at trial to identify the individuals who were with him, defendant finally provided the names "Trey" and "Renee." Defendant stated that he did not know their last names. From the record, there is no indication that the prosecutor knew any identifying information regarding these witnesses before trial. To the contrary, it appears that this information was only available to defendant. Defendant had the opportunity, before and during trial, to identify these individuals and request to bring them before the court. His reluctance to do so deprived *himself* of their potential testimony. *Brady* claims are grounded on the premise that the prosecution cannot suppress evidence. In this case, it is clearly the defendant doing the suppressing. Therefore, defendant has not established a *Brady* violation with respect to these witnesses.

## II. WAS DEFENDANT DENIED A FAIR TRIAL BY CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL?

Defendant next argues that he was denied the effective assistance of counsel due to defense counsel's failure to "pursue key witnesses"; presumably, Batty, Hockett, "Trey," and "Renee." However, because this issue is unpreserved, our review is limited to mistakes apparent on the lower court record. *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998).

First, this court must address whether this argument was abandoned. Defendant's counsel merely argues that prior defense counsel was "professionally obligated" to "pursue key witnesses," but he fails to provide any further explanation or analysis supporting his argument.

-4-

Defendant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give other cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, this court need not consider the merits of defendant's ineffective assistance of counsel claim. Id.

However, because defendant addresses the issue of ineffective assistance in his Standard 4 Brief, this court will address the issue. In order to establish ineffective trial counsel, the defendant must establish that counsel's performance fell below an objective standard of reasonableness, and, but for counsel's error, there is a reasonable probability that the outcome of defendant's trial would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Decisions regarding what witnesses to call at trial are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). We presume that it was trial strategy for defense counsel not to pursue the testimony of Batty and Hockett, given that they were victims of the charged offenses and it was likely that their testimony could have aided the prosecution. Further, regarding "Trey" and "Renee," defendant fails to explain how their testimony would have helped his case. He notably admits that "it is unknown what the testimony of the missing witnesses . . . would reveal." Therefore, because it is not apparent from the lower court record that the testimony of the missing witnesses would have benefitted defendant and affected the outcome of trial, defense counsel was not ineffective for failing to pursue them to testify.

## III.    DEFENDANT'S STANDARD 4 BRIEF

Defendant raises several issues in a Standard 4 Brief and a supplemental Standard 4 Brief, which he filed upon a motion granted by this Court. *People v Walker*, unpublished order of the Court of Appeals, entered July 24, 2015 (Docket No. 322133).

In his Standard 4 Brief, defendant first argues that the trial judge erroneously conducted his preliminary examination *and* presided over his trial; thus, the circuit court's jurisdiction following defendant's bind over was improper. We review de novo issues concerning subject-matter jurisdiction. *People v Glass*, 288 Mich App 399, 400; 794 NW2d 49 (2010). Pursuant to MCL 600.401, trial courts may adopt a plan of concurrent jurisdiction, through which a circuit court may be granted a right to exercise the power and jurisdiction of a district court and vice versa. The trial courts in Berrien County adopted a plan of concurrent jurisdiction in a local administrative order (LAO), which conferred jurisdiction to the county's judges to act in all proceedings in the circuit court, district court, and probate court. See Berrien County LAO

2015-03.[3]  Our Supreme Court approved of Berrien County's plan of concurrent jurisdiction in 2004.  See Administrative Order No. 2004-02, 470 Mich lxiv (2004).

Defendant also cites *People v Ramsey*, 385 Mich 221, 224; 187 NW2d 887 (1971), for the proposition that neither party gave consent to the trial court to conduct the preliminary examination and preside over the trial.  However, *Ramsey* is not applicable under these facts.  The primary issue in *Ramsey* was whether the trial court, acting as the trier of fact, could preside over both the preliminary examination and the trial.  The court stated, "we hold that as an absolute rule it is reversible error for the trial court sitting *without a jury* to refer to the transcript of testimony taken at the preliminary examination except under the exceptions provided by statute.  *A jury*, if impanelled [sic], would not be aware of the testimony taken at a preliminary examination except under the provisions of the statute."  *Id*. at 225[emphasis added].  In this case, a *jury* presided over the trial; thus, *Ramsey* would not apply.

Furthermore, the record indicates that defendant never raised this issue during trial.  The fact that the same judge presided over both proceedings was obvious; thus, defendant presumably was aware of this fact.  If defendant were to succeed on this claim, the decision "would be contrary to the rule that defendants cannot harbor error as an appellate parachute." [internal quotations omitted].  *People v Franklin*, 491 Mich 916; 813 NW2d 285, 286 (2012), citing *People v Pipes*, 475 Mich. 267, 278 n. 39, 715 N.W.2d 290 (2006).  Therefore, defendant's argument that the trial judge improperly presided over the preliminary examination and the jury trial is without merit.

Next, defendant argues that the circuit court did not have jurisdiction over him because he was never arraigned in circuit court.  Although there was no circuit court arraignment in the instant case, defendant signed a document following his preliminary examination that indicated that he waived arraignment, pleaded not guilty to the charges, and demanded a jury trial in circuit court.  In doing so, defendant waived his right to a circuit court arraignment and consented to the circuit court's jurisdiction.  *People v Nix*, 301 Mich App 195, 207-208; 836 NW2d 224 (2013).  However, regardless of defendant's waiver, Berrien County eliminated the requirement that a defendant be arraigned in circuit court pursuant to MCR 6.113(E).  See LAO 2014-02.[4]  The prosecutor complied with the requirements of the local administrative order by serving defense counsel copies of the information and filing a proof of service with the trial court.  There is no indication that defendant did not subsequently receive a copy of the information.  Therefore, defendant's argument with respect to the circuit court arraignment is without merit.

---

[3] The order that was in effect at the time of defendant's trial concerning the courts' plan of concurrent jurisdiction was actually LAO 2013-06, which was replaced and rescinded by LAO 2015-03.  The orders contain the same pertinent language.

[4] The order that was in effect at the time of defendant's trial concerning circuit court arraignments was LAO 2007-05, which was replaced and rescinded by LAO 2014-02.  The orders contain the same pertinent language.

Defendant further argues that he was denied a fair trial, as guaranteed by both state and federal constitution, when the prosecution failed to protect petitioner's due process rights and that his counsel abandoned their duty to protect his constitutional rights.[5] The denial of defendant's constitutional rights and the abandonment of counsel presumably arose out of prosecutorial misconduct and ineffective assistance of counsel with respect to his bind over and circuit court arraignment. However, because we find that the circuit court did have jurisdiction to hear the case and that defendant waived his right to arraignment, we find that the prosecutor did not commit misconduct by allowing the trial to proceed. Additionally, defense counsel was not ineffective and did not abandon his duty as counsel because counsel is not required to take a meritless position or make a futile objection. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Therefore, this claim is without merit.

Defendant's final argument in his Standard 4 Brief concerns the ineffective assistance of appellate counsel. Although defendant states that this issue is raised for preservation purposes, the record is sufficient to decide the issue on the merits in this appeal. Defendant argues that appellate counsel "may have opened a door to jurisdiction that otherwise by law did not exist" by raising two issues on appeal. Defendant further argues that appellate counsel may not have raised all of the issues present and presumably failed to raise "Dead Bang Winners" on appeal. However, we have found all claims raised by defendant and his counsel to be without merit. Appellate counsel is not required to raise a meritless argument on appeal. *People v Reed*, 449 Mich 375, 402; 535 NW2d 496 (1995). Moreover, appellate counsel's failure to raise the jurisdictional challenges was "insignificant" given that defendant presented the same claims to this Court in his Standard 4 Brief. *People v Pratt*, 254 Mich App 425, 430-431; 656 NW2d 866 (2002). Therefore, appellate counsel was not ineffective.

## IV. DEFENDANT'S SUPPLEMENTAL STANDARD 4 BRIEF

In defendant's supplemental Standard 4 Brief, he again raises several jurisdictional challenges and all are without merit. First, defendant argues that the complaint and supporting affidavit were not notarized; thus, they should be considered void. However, the complaint and supporting affidavit in the lower court record are notarized and further indicate that they were "subscribed and sworn" before a judicial officer pursuant to MCR 6.101(B). Defendant further argues that the affidavit did not contain facts alleging or amounting to probable cause. However, contrary to defendant's argument that the felony warrant was not based on any facts, the felony complaint contains factual allegations regarding the offenses, and the affidavit contains facts "from the complainant or others" that supported issuance of the warrant. See MCR 6.102(B) (indicating that probable cause for the arrest warrant may be based on "factual allegations in the complaint [and] affidavits from the complainant or others"). Accordingly, defendant's argument that the complaint and affidavit were defective in this regard is without merit.

Next, defendant argues that the felony complaint and warrant were defective because they were authorized by an assistant prosecutor rather than the prosecuting attorney. However,

---

[5] In defendant's Standard 4 Brief, these two issues were raised separately but can effectively be considered together.

under MCL 49.42, an assistant prosecutor is permitted to "perform any and all duties pertaining to the office of the prosecuting attorney at such time or times as he may be required so to do by the prosecuting attorney and during the absence or disability from any cause of the prosecuting attorney . . . " Thus, it was not error for an assistant prosecutor to authorize these documents.

Next, defendant argues that the trial court's jurisdiction was improper because the felony complaint did not contain any information supporting an independent judgment that probable cause existed for the felony warrant to be issued. MCL 6.101(A) governs the requirements of a felony complaint: "The complaint must include the substance of the accusation against the accused and the name and statutory citation of the offense." Here, the felony complaint meets these requirements by outlining the substance of the accusation and the corresponding statutes for each of the charged offenses. For instance, with respect to the first armed robbery charge, the complaint states that defendant "did, in the course of committing a larceny of a Virgin Cellular phone, use force or violence against a person present, Naeisha [sic] Dudley, and in the course of that conduct possessed a pistol, a dangerous weapon; contrary to MCL 750.529."

Moreover, the factual allegations in the complaint, combined with the statements from the complainant set forth in the accompanying affidavit, were sufficient for a finding of probable cause. Under MCR 6.102(B), '[a] finding of probable cause may be based on hearsay evidence and rely on factual allegations in the complaint, affidavits from the complainant or others, the testimony of a sworn witness adequately preserved to permit review, or any combination of these sources." The allegations in the complaint combined with the accompanying affidavit were sufficient. The affidavit set forth in greater detail the events of October 14, 2013, as a description of the charged offenses. Accordingly, defendant's argument to the contrary is without merit.

Next, defendant argues that the felony complaint and warrant were defective because they did not identify the times or places the charged offenses occurred. Defendant provides no authority supporting that such information is required on a felony complaint or warrant. The complaint and warrant in this case complied with the requirements set forth by court rule. See MCR 6.101(A) (governing felony complaints); MCR 6.102(C) (governing felony warrants).[6] Therefore, defendant's argument is without merit.

Defendant's last jurisdictional argument is that the circuit court never assumed jurisdiction because there was not a magistrate's return to circuit court. Under MCL 767.40,

---

[6] Under MCR 6.102(C), a warrant must:

(1) contain the accused's name, if known, or an identifying name or description

(2) describe the offense charged in the complaint

(3) command a peace officer or other person authorized by law to arrest and bring the accused before a judicial officer of the judicial district in which the offense allegedly was committed or some other designated court, and

(4) be signed by the court. [MCR 6.102(C).]

-8-

"[a]ll informations shall be filed in the court having jurisdiction of the offense specified in the information after the proper return is filed by the examining magistrate and by the prosecuting attorney of the county as informant." A circuit court obtains personal jurisdiction over a defendant when a return is filed in the circuit court by the district court before which the defendant waived preliminary examination or was examined. *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998). Here, a preliminary examination was held on October 31, 2013, at the conclusion of which the district court signed a bind over document, officially binding defendant over on the charges in the complaint. The circuit court received the document for filing on the same day. Thereafter, the prosecutor filed a felony information. Given that the record contained the felony complaint, warrant, bind over document, and felony information, there is no error evident in the procedure binding defendant over to circuit court.

Nevertheless, even if an error could be found, a defendant may waive defects in personal jurisdiction. *People v Richards*, 205 Mich App 438, 444; 527 NW2d 823 (1994). In this case, defendant signed a document following his preliminary examination in which he waived arraignment and agreed to appear at future hearings scheduled in the circuit court. Defendant subsequently appeared in court and was convicted of the charged offenses. Therefore, any potential defects in personal jurisdiction were waived. See *People v Kiyoshk*, 493 Mich 923, 924; 825 NW2d 56 (2013).[7]

Next, defendant argues that the prosecutor committed misconduct and fraud in several respects. Defendant raises these arguments for the first time on appeal; thus, our review is limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. Defendant first argues that the prosecutor committed fraud by requesting two adjournments to wait for DNA evidence that was already in his possession. Defendant's argument misconstrues the record. The DNA analyst, Kate Herrema, testified that she *began* her analysis on November 26, 2013. The prosecutor requested an adjournment on December 20, 2013, based on information that there had been a backlog at the crime lab, and again on January 3, 2014, based on Herrema's indication that the DNA testing needed more time to be completed. Thus, contrary to defendant's argument, there is nothing in the record supporting that Herrema's DNA analysis was completed before these hearings, and defendant has not demonstrated that the prosecutor fraudulently or deceptively requested the adjournments.

Next, defendant argues that the prosecutor violated the rule of completeness in MRE 106 by only offering into evidence a portion of a telephone call that defendant made from jail. Under MRE 106, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Here, although only part of a recorded telephone conversation was admitted in evidence, defendant

---

[7] Defendant also argues prosecutorial misconduct and ineffective assistance of counsel with respect to these alleged jurisdictional defects. However, because we find that jurisdiction was proper, defendant's claims of prosecutorial misconduct and ineffective assistance of counsel on these grounds are without merit.

never requested admission of the recording in its entirety. He fails to make any showing as to why the remainder of the telephone call should have been "considered contemporaneously" with what was played for the jury. See MRE 106. Therefore, there is no basis for finding that the recording was erroneously admitted into evidence and that the prosecutor committed misconduct by offering only part of the telephone call.

Defendant also argues that the prosecutor committed misconduct by "reneging" on a plea deal that would have given defendant immunity from the charged crimes. Again, defendant's argument misconstrues the record. The prosecutor informed the trial court that an immunity offer existed, but it did not concern this case. Rather, defendant was offered immunity—if he agreed to speak with police—from any crimes that were discovered as a result of those conversations. The prosecutor stated during trial that "it was very clear when I made that immunity offer to him, [that] it had nothing to do with this case[;] he understood fully, that these charges were going to survive anything he said to the police. The immunity was for crimes that the police might find out as a result of him talking to them, and . . . he would get immunity on those charges, unless there was murder, violence or guns involved." Therefore, there is no evidence in record that the prosecutor committed misconduct with respect to the immunity offer.

Defendant argues that defense counsel was ineffective for failing to challenge the prosecutor's above-mentioned conduct. However, as discussed in detail above, any challenges to the prosecutor's conduct on these grounds would have been futile. *Thomas*, 260 Mich App 457. Therefore, defense counsel was not ineffective.

Finally, defendant makes a claim concerning MCR 6.500, which governs post-appellate relief. However, because this is a direct appeal of defendant's convictions and sentence, we find MCR 6.500 to be inapplicable and defendant's argument regarding this rule to be without merit.

## V. SENTENCING

Defendant argues that the trial court violated his right under the Sixth Amendment, US Const Am VI, to have each element of his charged offenses decided by an impartial jury, because the trial court scored several of his offense variables (OVs) on the basis of facts found by the court rather than by the jury. "A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo." *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015). We likewise review the interpretation and application of guidelines statutes de novo as a question of law. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). Defendant correctly notes that the trial court commits plain error that could mandate resentencing by calculating an OV score "using facts beyond those found by the jury or admitted by the defendant" if that miscalculation "would change the applicable guidelines minimum sentence range." *Lockridge*, 498 Mich at 399. However, defendant concedes that this issue is unpreserved. Unpreserved constitutional errors warrant reversal only if the defendant can "show reversible prejudice, actual innocence, or that the [constitutional] error 'seriously affect [ed] the fairness, integrity or public reputation' of the trial." *People v Pipes*, 475 Mich 267, 270; 715 NW2d 290 (2006), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant actually did properly object to the scoring of OV 19, a situation not contemplated by *Lockridge*. See *Lockridge*, 498 Mich at 394. We therefore review defendant's challenge to OV 19 less deferentially: questions of law are reviewed de novo, *Francisco*, 474 Mich at 85, and the trial court's findings of fact are reviewed for clear error, *People v Jones*, 494 Mich 880, 880-881;

834 NW2d 485 (2013), subject to the requirement pursuant to *Lockridge* that the trial court must determine sentencing variables by reference to facts found by the jury or admitted by the defendant.

The trial court assessed fifteen points under OV 1, which requires that "[a] firearm was pointed at or towards a victim . . . " MCL 777.31(1)(c). The trial court also assessed five points under OV-2, which requires that an "offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(d). Defendant argues that the facts supporting these scores were not facts necessary to prove the convicted offenses. We disagree. Defendant was convicted of Armed Robbery under MCL 750.529, which requires a person to possess "a dangerous weapon." During trial, multiple witnesses testified that defendant pointed a gun at them or other victims. Na'eisha testified that the gun was pointed at her. She also testified that the gun was pointed at Batty and Hockett. Further, the neighbor testified that the gun was pointed at his house when defendant exited the home. Furthermore, the record does not indicate that any other weapon, besides a handgun, was identified during trial. Therefore, the record supports that the jury found that defendant had pointed a handgun at the victims during the commission of the crimes charged.

Defendant was also convicted of felony firearm. MCL 750.227b(1). A person is guilty of felony firearm when they carry or possess a firearm while committing or attempting to commit a felony. MCL 750.227b(1). By definition, defendant must have been found to be carrying a firearm during the commission of the crimes charged. Therefore, it is clear that the jury found that defendant had a firearm. The trial court did not error in assessing defendant fifteen points under OV 1 and five points under OV 2.

Defendant further argues that the trial court erred by assessing 1 point under OV 12. We disagree. A score of one point under OV 12 indicates that "one contemporaneous felonious criminal act involving any other crime was committed." MCL 777.42(1)(f). In order to be a contemporaneous act, it must have "occurred within 24 hours of the sentencing offense and the criminal act [did] not result[] and will not result in a separate conviction." MCL 777.42(2)(a). *Lockridge* clearly states that plain error does not occur when defendant admits the facts that are used for scoring under the sentencing guidelines. *Id*. at 394-395. Defendant clearly admitted during trial that he possessed the heroin. Further, he admitted to possessing marijuana. Therefore, the trial court did not commit clear error by assessing one point under OV 12. In fact, according to defendant's own testimony, he may have committed multiple drug offenses and possibly could have received a higher score under OV 12.

Defendant also argues that the trial court erred when it assessed ten points under OV 19. We agree. Because this scoring issue is preserved, we review the lower court's factual findings for clear error. To receive a score of ten points under OV 19, defendant must have interfered "with or attempted to interfere with the administration of justice." MCL 777.49(c).

Defendant argues that this fact was never found by the jury and was not germane to the verdict of the convicted crimes. We agree. The trial court based its assessment of this variable on the testimony that defendant attempted to pay Na'eisha $200 and attempted to persuade another witness before trial. However, these facts were never proven by the jury. None of the convicted offenses required a showing of obstruction. Defendant did admit during trial that he offered to pay $200 to Na'eisha; however, he claimed that he did this in an effort to pay for the stolen marijuana. Furthermore, defendant denied any obstruction during the sentencing hearing when he objected to the scoring of this variable. Therefore, this fact was not found by the jury or admitted to by the defendant.

In *Lockridge*, the Supreme Court held that facts found by a preponderance of the evidence cannot be used to mandatorily increase defendant's minimum sentence. *Id* at 399. Therefore, because the trial court in this case relied upon facts not found by the jury or admitted by the defendant, the trial court clearly erred pursuant to *Lockridge*. Furthermore, the possible reduction of ten points may have reduced defendant's minimum sentencing guideline range from 171-570 months to 135-450 months. Therefore, this case is remanded in accordance with *United States v Crosby*, 397 F.3d 103, 117–118 (C.A.2, 2005) and *Lockridge*, 498 Mich at 399 (2015). The trial court must determine "whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion. If the trial court determines that it would not have imposed the same sentence but for the constraint, it must resentence the defendant." *Id* at 399.

## VI.    CONCLUSION

In conclusion, we affirm defendant's convictions; however, because defendant's sentencing guidelines range was unconstitutionally constrained by a violation of the Sixth Amendment, we remand this case for further inquiry in accordance with the procedure outlined in *Lockridge*, 498 Mich at 399 and *Crosby*, 397 F. 3d at 117-118. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Amy Ronayne Krause