*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

RICKY EUGENE GROSS,

        Defendant-Appellee.

UNPUBLISHED
October 25, 2024
2:10 PM

No. 369876
Wayne Circuit Court
LC No. 03-009154-01-FC

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted[1] the order granting defendant's 2019 successive motion for relief from judgment (MRJ) and request for a new trial. We affirm.

The jury convicted defendant of felony murder, MCL 750.316(b), first-degree murder, MCL 750.316(a), two counts of assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant's convictions arose from a shooting at Club Med, a Detroit nightclub, in 2002. The testimony at trial established that an unknown male attempted to rob Eugene Harris of his watch while he was standing in line to enter Club Med. Harris evaded the man and dove into the vestibule of the club. Officer Derrick Mason, an off-duty member of the Detroit Police Department, was standing at the entrance to the club when this occurred. Officer Mason attempted to remove his gun from its holster, but the man shot Officer Mason before he could get his weapon. The man fired several other shots into the club, killing one female. The shooter disappeared after the shooting. Marcia Spivey observed the shooter during the incident and helped the police draw a sketch of the shooter.

A few months later, Officer Mason saw defendant's picture appear on a television show, Detroit's Most Wanted, and identified him as the Club Med shooter. Officer Mason was unable

---

[1] *People v Gross*, unpublished order of the Court of Appeals, entered April 15, 2024 (Docket No. 369876).

to identify defendant's picture from a photograph array, but did note that defendant's picture looked like the shooter. A month later, Officer Mason happened to see defendant in jail on unrelated charges and identified him as the shooter. Spivey immediately recognized defendant as the shooter when she viewed a lineup. At trial, both Officer Mason and Spivey identified defendant as the shooter.

Defendant raised numerous appeals and MRJs during his incarceration. The instant appeal stems from defendant's 2019 MRJ, wherein he argued that he was entitled to a new trial on the basis of newly discovered evidence pursuant to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In 2019, defendant received the prosecutor's file for his case pursuant to his request under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. Defendant found police reports in his file that he alleged the prosecution did not provide to him at the time of trial. The trial court denied defendant's MRJ after finding that defendant had access to the police reports because there were no reported discovery problems at the time of trial. A panel of this Court denied defendant's delayed application for leave to appeal the trial court's decision. *People v Gross*, unpublished order of the Court of Appeals, entered May 20, 2021 (Docket No. 356670). However, the Michigan Supreme Court vacated the trial court's order and remanded the case for an evidentiary hearing to determine if the evidence in the police reports was discovered before defendant's first MRJ and, if it was not, whether defendant was entitled to a new trial. *People v Gross*, 509 Mich 875 (2022). After holding two evidentiary hearings, the trial court concluded that the police reports were newly discovered evidence. The trial court also determined that the newly discovered evidence entitled defendant to a new trial pursuant to *Brady* because the evidence made a different result probable on retrial. Thereafter, the trial court entered an order vacating defendant's convictions and sentences. The prosecution then sought leave to appeal, which was granted.

The prosecution argues that the trial court abused its discretion when it granted defendant's MRJ because the evidence on which defendant relied was neither new nor admissible at retrial. We conclude that a violation of *Brady* occurred in this case where the prosecution suppressed the police reports, the evidence contained in the police reports was favorable to defendant, and the evidence was material. As such, we hold that the trial court did not abuse its discretion when it granted defendant's MRJ.

"A trial court's decision on a motion for relief from judgment is reviewed for an abuse of discretion." *People v Christian*, 510 Mich 52, 74-75; 987 NW2d 29 (2022). "An abuse of discretion occurs when the court makes a decision that falls outside the range of reasonable and principled outcomes, or makes an error of law." *Id*. at 75 (quotation marks and citations omitted). A trial court's findings of fact are reviewed for clear error. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "Clear error occurs when the reviewing Court is left with a firm conviction that the trial court made a mistake." *People v Caswell*, 336 Mich App 59, 70; 969 NW2d 538 (2021) (quotation marks and citation omitted). "A trial court's decision on a *Brady* claim is reviewed de novo." *Christian*, 510 Mich at 75.

"Generally speaking, one and only one motion for relief from judgment may be filed with regard to a conviction[.]" *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). However, a defendant may file a successive MRJ on the basis of a claim of new evidence that was not discovered before the first motion. MCR 6.502(G)(2)(b).

-2-

The police reports that were sent to defendant in 2019 constituted new evidence. Defendant testified that the police reports were not contained in the file that his lead trial counsel, Richard Powers, gave to him after trial, though at the time defendant believed that the file he received contained all of the evidence in the case. Defendant testified that he did not receive the police reports until 2019, after his four prior MRJs were filed. Further, Che A. Karega II, an attorney who served as second chair at defendant's trial, signed an affidavit stating that he had never seen the seven-page report that was emailed to him (by an investigator working for defense counsel) on August 14, 2023, and that, "It definitely was not provided before trial." He affirmed the facts stated in his affidavit at the evidentiary hearing held on January 4, 2024. Karega testified that he had not seen the documents until they were recently emailed to him, that he reviewed all of the discovery in the case during the time of defendant's trial, and that the care progress reports were not part of that file. Importantly, Karega testified the defense would have utilized the reports if it had them.

Defendant's lead trial counsel, Powers, has since passed away, and an investigator was unable to locate whatever files Powers retained for defendant's case. However, none of the information contained in the reports was mentioned at trial, indicating that Powers likely did not possess the reports. The only indication that defendant may have had the reports at the time of trial was the prosecutor's statement at the evidentiary hearing that it is the policy of the prosecutor's office to supply defendants with their entire file during a trial. This statement from the prosecutor is insufficient to demonstrate that the trial court clearly erred by finding that the reports constituted new evidence, especially in light of the foregoing evidence suggesting the defense did not possess the reports before 2019.

We disagree with the prosecution's argument that none of the information in the police reports constituted evidence because it would all be inadmissible at retrial, and thus, could not constitute "new evidence" under MCR 6.502(G)(2)(b). As discussed later, the police reports revealed new evidence that the defense could present through witnesses at retrial. Accordingly, defendant was permitted to file a successive MRJ on the basis of newly discovered evidence. MCR 6.502(G)(2)(b).

With respect to defendant's entitlement to the relief requested in the MRJ, MCR 6.508(D)(3) provides that, if the grounds raised in an MRJ could have been raised in a prior appeal or MRJ, a trial court is not permitted to grant relief unless the defendant demonstrates "good cause for failure to raise such grounds on appeal or in the prior motion" and "actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3)(a) and (b). As discussed above, the trial court did not clearly err by finding that defendant did not receive the police reports until his 2019 FOIA request. Since defendant did not know about the police reports until 2019, he could not have sought relief in conjunction with the reports in a prior MRJ or his first appeal. See *Johnson*, 502 Mich at 565 (explaining that the subject claim could not have been raised in the defendant's previous appeal because the defendant did not know about the new evidence when he appealed). Accordingly, the requirements set forth in MCR 6.508(D)(3) are not applicable in this case.

Since the trial court was permitted to grant the relief requested in defendant's 2019 MRJ, we must determine whether defendant demonstrated that he was entitled to relief. See MCR 6.508(D). Defendant argues he was entitled to relief because the prosecution violated *Brady*, 373

US 83.  "To establish a *Brady* violation, a defendant must show that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material."  *Christian*, 510 Mich at 76 (quotation marks and citation omitted).

"The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching . . . ."  *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).

> To establish that exculpatory evidence is material, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability means a probability sufficient to undermine confidence in the outcome.  A defendant need not demonstrate by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.  Rather, the relevant question is whether the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  [*Christian*, 510 Mich at 76 (internal quotation marks and citations omitted).]

The materiality of suppressed evidence should be evaluated in the context of the entire record.  *Id*. at 77.  "[D]etermining whether defendants received a trial resulting in a verdict worth [sic] of confidence requires an analysis not just of the evidence presented, but of the quality of the investigation."  *Id*. at 80 (quotation marks and citation omitted).

Defendant identifies the following information from the police reports as pertinent to his MRJ: (1) Officer Michael Carlisle's opinion that Harris was lying; (2) Spivey's statements that she knew Harris for a long time, believed Harris was shady, did not think an attempted robbery occurred, and believed the shooter intended to shoot Harris; (3) Spivey's statement that Harris and an unknown male argued over a girl the week before the shooting; and (4) Investigator Mack's[2] opinion that the drawing of the shooter strongly resembled Officer Michael McLean, whom Internal Affairs was allegedly preparing to arrest on suspicion of robbing drug dealers.  Defendant also mentions that Officer McLean carried a gun that could have produced the .40 caliber shell casings found at Club Med.[3]

With respect to the first *Brady* prong, as discussed earlier, it appears the trial court did not clearly err when it found that the prosecution suppressed evidence.  The police reports were part of the prosecutor's file but the prosecution did not give the reports to the defense at the time of trial.

---

[2] Investigator Mack's full name was not provided below.

[3] While the police reports do not contain information regarding the caliber of McLean's weapon, the record does establish that McLean's fellow City of Detroit police officer, Officer Mason, did carry a .40 caliber Smith and Wesson Glock (the parties stipulated at trial that none of the casings found at the scene of the shooting were fired from Mason's weapon).

Regarding the second *Brady* prong, the subject information contained in the reports was favorable to defendant. Officer Carlisle's opinion that Harris was lying and Spivey's opinion that Harris was shady were favorable to defendant because both undercut the testimony of Harris, a witness for the prosecution. Further, Spivey's adamant belief that a robbery was not attempted was favorable to defendant because that undermined defendant's conviction of felony murder, and it contradicted the prosecution's theory of the case, which was that the victims were shot during a robbery attempt. Additionally, Spivey's statement regarding the argument in which Harris engaged, and her belief that the shooter intended to harm Harris, was favorable to defendant because those pieces of information supported defendant's argument that he was not the shooter, i.e., defendant could argue that the unknown man who argued with Harris the prior week could have been the shooter. Finally, that the sketch of the shooter closely resembled Officer McLean was favorable to defendant because it indicated there could be another suspect for the shooting.

> Regarding the third prong of *Brady*:
> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. [*US v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985).]

The subject information in the police reports at issue here was material. The fact that Spivey had known Harris for years, coupled with the fact that Spivey had opined that Harris was "shady," could have allowed defendant to examine Spivey about Harris' reputation for untruthfulness, or by testimony in the form of an opinion about that character, pursuant to MRE 608(a).[4][5] If Spivey's answer contradicted her prior statement, she could have been impeached with the statement she made to Officer Carlisle, i.e., that she believed Harris was "shady."[6] Spivey's adamant impression that a robbery was not taking place, and that the shooter was attempting to shoot Harris, was relevant pursuant to MRE 401 as it would have rebutted the testimony of Harris on the issue of the underlying felony, as well as the prosecution's theory of the case (i.e., the testimony would make the fact of the underlying felony, and the prosecution's theory of the case less probable). Even if

---

[4] While it is improper for a witness to comment on the credibility of testimony offered by another witness, see *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013), testimony can be offered about the witness's character for untruthfulness. Pursuant to MRE 608(a), "A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character."

[5] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the version of the Michigan Rules of Evidence that would foreseeably be in effect on retrial—the current version of the rules.

[6] Although the prosecution has questioned the significance of that term used by Spivey, the implication is that Spivey opined that Harris had a reputation for untruthfulness. The New Oxford American Dictionary Third Edition (2010) defines the word "shady" as "of doubtful honesty or legality."

Spivey changed course at the time of trial and testified that a robbery had been taking place, the statement would have been admissible for impeachment purposes.

Defendant has argued that Harris knew the person who shot him, i.e., that it was the male with whom he had argued about a girl the week before, meaning that he knew defendant was not the shooter, and that he knew no robbery took place. To bolster that argument, in addition to the evidence contained in the report, he points to the 2010 affidavit of Lavoy Alexander who swears that Harris admitted those facts to him.

Had the police reports been produced, defendant could have investigated the allegation that an argument had occurred between Harris and an unknown male a week before the shooting, in an attempt to obtain corroborative evidence, including interviewing Spivey about the matter, and potentially examining her about it at the time of trial. Also, defendant would have been able to examine Harris about that issue at trial.

Additionally, the evidence would have allowed defendant to introduce yet another piece of evidence suggesting that he had been misidentified. One of defendant's arguments at trial pertained to a statement, by Officer Mason, that Ricky Michael Gross could have been the shooter, after Officer Mason saw him in a six-photograph lineup. Defendant's argument was that his theory of misidentification was made more probable by the fact that one of the witnesses to the shooting had tentatively identified someone whose only connection to the case was that he had the same first and last name as defendant. Looking at the suppressed police reports, they included a statement by Officer Mack in which he said the composite sketch strongly resembled Officer McLean. That statement prompted his colleague, Investigator Higgins, to go to central photo and retrieve a plain clothes photo of Officer McLean. Considering that the only evidence tying defendant to the crime was identification testimony by two witnesses, any evidence that put into doubt that testimony would have been important. The above evidence would have allowed defendant to argue that TWO other people who were a part of the investigation of this case, not just one, resembled the shooter, i.e., that information would have bolstered his misidentification argument.[7]

"In determining the materiality of undisclosed information, a reviewing court may consider any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case." *People v Lester*, 232 Mich App 262, 282; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault*, 495 Mich 142, 145; 845 NW2d 731 (2014). Also, when determining whether the new evidence is material, the Michigan Supreme Court has noted that the test articulated in *Strickler* requires that the evidence be viewed in its totality. *Chenault*, 495 Mich at 155. The adverse effects that the prosecutor's failure to disclose might have had on the preparation and/or presentation of the defendant's case is significant. The police reports indicated that Spivey had twice contacted the police about an unknown male arguing with Harris about a girl and said that the owner of Pinnacle Clothing Store had information on that

---

[7] It should be noted that the information contained in the police reports about Officer McLean allegedly being investigated by internal affairs would not by itself be admissible as it involves multiple levels of hearsay, based upon what is currently in the record. But, if defendant had been given the police reports, he could have investigated those allegations.

topic. Had defendant known about that information, he could have attempted to interview the owner of the clothing store, in an attempt to identify the girl and the unknown male; however, defendant never had any such chance because the information was not disclosed. Had defendant known that Officer Mack opined that the composite sketch strongly resembled Officer McLean, defendant could have attempted to interview Officer Mack and Officer McLean. After hearing about Officer Mack's opinion, Investigator Higgins went to central photo and retrieved a plain-clothes photograph of Officer McLean. Had defendant known about that fact, he could have requested a copy of the photograph of Officer McLean and potentially offered it as evidence at trial. However, because defendant did not know about the above information, he had no opportunity to prepare his case using the information or to present it to the jury.

Finally, had the police reports been produced, it would have " 'raised opportunities to attack . . . the thoroughness and even good faith of the investigation . . . .' " *Christian*, 510 Mich at 80, quoting *Kyles v Whitley*, 514 US 419, 445; 115 S Ct 1555; 131 L Ed 2d 490 (1995). In *Christian*, the Michigan Supreme Court found important the facts and analysis of *Kyles*, restating those facts as follows:

> The defendant was convicted of the murder of Dolores Dye, who was shot in the head while putting grocery bags in her car. *Id*. at 423, 115 S Ct 1555. The man who shot her took her keys and drove away. Two days later, a man named Beanie called the police station and reported that he had bought a car matching the description of the stolen car from the defendant. *Id*. at 424, 115 S Ct 1555. Beanie claimed he came forward to the police because he feared the defendant had stolen the car. But Beanie's story changed over time and grew inconsistent with the details of the crime known to the police. And yet, "[t]he police neither noted the inconsistencies nor questioned [him] about them." *Id*. at 427, 115 S Ct 1555.
> The prosecution withheld recordings of the conversations between the police and Beanie in which his story changed. *Id*. at 428, 115 S Ct 1555. The Court found that the suppressed evidence was material in part because it "would have raised opportunities to attack . . . the thoroughness and even the good faith of the investigation . . . ." *Id*. at 445, 115 S Ct 1555. Beanie's statements to the police "were replete with inconsistencies and would have allowed the jury to infer that Beanie was anxious to see [the defendant] arrested" for the murder. *Id*. The statements would have "revealed a remarkably uncritical attitude on the part of the police." *Id*. *Kyles* shows that determining whether defendants received "a trial resulting in a verdict worth[y] of confidence" requires an analysis not just of the evidence presented, but of the quality of the investigation. [*Christian*, 510 Mich at 80.]

Just as in *Kyles*, the police reports in the present case would have allowed defendant to attack the quality of the investigation. Defendant could have argued that the police had information, obtained from Spivey, that Harris had an argument with an unknown male a week before the shooting, that she adamantly believed that no robbery attempt had been made at the time of the shooting, and that she had questioned Harris' reputation for truthfulness, yet police failed to even attempt to investigate those issues. Defendant could have argued that police knew that one of the officers investigating the case believed that the composite photograph strongly resembled Officer McLean,

a plain-clothes picture of whom police had in their possession, yet they never even interviewed McLean or followed up on that issue.

To summarize, viewing the evidence in its totality, had the police reports been provided to defendant, he could have introduced evidence via Detective Mack that there was yet another person investigated who closely resembled the composite sketch. He could have presented evidence via Spivey rebutting the story told by one of the victims, Harris, that the shooter was a stranger attempting to rob him. Further, he could have introduced evidence via Spivey that Harris had been involved in an argument with another male regarding a woman the week before, and potentially that Harris has a reputation for being untruthful (i.e., "shady"). That evidence would have supported defendant's theory that someone who Harris already knew was attempting to shoot him. As described above, the failure to disclose the police reports had significant adverse effects on the preparation and/or presentation of the defendant's case. See *Lester*, 232 Mich App at 282. Finally, he could have argued that the investigation by police was not thorough and was not conducted in good faith as police failed to follow up on the allegations made by Spivey or the fact that the composite sketch was alleged to strongly resemble Officer McLean. Taken as a whole, the above evidence would have arguably bolstered defendant's argument that he was misidentified and that another person was the shooter. Therefore, we believe the evidence was material because there is a reasonable probability—"a probability sufficient to undermine confidence in the outcome"— that, viewed in totality, the result of the proceeding would have been different if it had been disclosed to the defense. See *Bagley*, 473 US at 682.

Accordingly, we conclude that the trial court did not abuse its discretion when it granted defendant's MRJ, after properly concluding defendant established that a *Brady* violation had occurred, entitling him to a new trial.

Affirmed.

/s/ Adrienne N. Young
/s/ Randy J. Wallace

-8-